**GOVERNMENT OF the VIRGIN ISLANDS**

v.

**Dennis BLYDEN, Etienne George, Appellants.**

Nos. 79–1772, 79–2431.

United States Court of Appeals, Third Circuit.

Argued April 23, 1980.

Decided July 22, 1980.

Charlotte L. Poole Davis (argued), Charlotte Amalie, St. Thomas, V. I., for appellant, Etienne George.

Judith L. Bourne (argued), Asst. Federal Public Defender, Christiansted, St. Thomas, V. I., for appellant, Dennis Blyden.

Ishmael A. Meyers, U. S. Atty., Hugh P. Mabe, III (argued), Asst. U. S. Atty., Charlotte Amalie, St. Thomas, V. I., for appellee.

Before ADAMS, MARIS and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

Etienne George and Dennis Blyden appeal from their convictions for unlawful entry and petty larceny after a bench trial in the District Court of the Virgin Islands.[1] Appellants individually and jointly raise various grounds for reversal.[2] Because we find none of their arguments to be persuasive, we will affirm the district court.

At about 2 a. m. on September 23, 1978, police officer Bernice O'Neal was dispatched to investigate a suspicious van in the Altona area. She proceeded up the hill into Altona. En route she met Joseph Isaac who informed her that a group of young men were in his home, taking his belongings and putting them into a van parked on the side of the road. Officer O'Neal then

---

1. Defendants were tried, pursuant to a criminal information, for burglary in the third degree, grand larceny, and receipt of stolen property in violation of V.I.Code Ann. tit. 14, §§ 444(1), 1083(1) and 2101 (1964 & Supp.1978). They were found guilty of the lesser included offenses of unlawful entry, V.I.Code Ann. tit. 14, § 445 (1964), and petty larceny, V.I.Code Ann. tit. 14, § 1084 (1964), and were each sentenced to one year imprisonment on each charge, to be served consecutively.

2. Appellant George alleges that the trial court erred when it found contrary to law and the weight of the evidence that George was in joint possession of stolen property, that George's motion for judgment of acquittal should be denied, and that the evidence negated innocent presence of any of the defendants. Appellant

Blyden alleges the trial judge's finding that he was in joint possession of stolen property is erroneous as a matter of law; that his motion for a judgment of acquittal was erroneously denied because his conviction of unlawful entry and petty larceny is not supported by the evidence as there was no possession which would have been necessary to support an inference of his participation in the crime and there was insufficient proof of any intent to permanently deprive the owner of possession for him to be convicted of larceny; and that the trial judge's finding that the evidence negated innocent presence is contrary to the weight of the evidence. He also argues that it was an abuse of discretion for the trial judge to cut off cross examination *sua sponte* of a government witness and to refuse to entertain his proffer.

told Isaac to get in the rear seat of the patrol car and keep his head down while she checked out the area. When she arrived at the top of the hill, Officer O'Neal observed a blue van parked on the side of the road which Isaac identified as the same van into which he had observed the young men putting his belongings. Because of the darkness, O'Neal was unable to see anyone in the van or in the dwelling and she drove down the hill, blocked the road and called for backup assistance. Additional patrol cars responded.

A short time later, the van with seven occupants, travelling down the hill with its lights off, was intercepted by the police. The occupants were ordered to leave the van. A search of the van revealed five shirts, two pairs of pants, three jackets, one pair of shoes, one Polaroid 44 camera, one Sanyo three band radio, and one cutlass. Isaac identified these items as belonging to him. Isaac, in his subsequent written statement, said that he had not given any of the men in the van permission to enter his home or to remove or to possess any of his property.

Four of the occupants of that van, including appellants Etienne George and Dennis Blyden, were tried by the court. At the trial the evidence consisted of the testimony of the arresting police officers, Bernice O'Neal and Elvin David, a written statement that Joseph Isaac had given to the police,[3] and the testimony of defendant Dennis Blyden.

Blyden, the only defendant who testified, said that he had been at a political rally in Frenchtown when he caught a ride in a van driven by Neil George, brother of the defendant Etienne George. Several others were also given rides home that evening. According to Blyden, he lay down in the back and went to sleep as the van went up a hill to drop off one of the other persons who had caught a ride, and he was awakened by the officer speaking through the

loudspeaker and saw bright lights shining into the van. Blyden was staying at his grandfather's house on Vester Gade that night, slightly more than a five minute trip from Frenchtown.

During direct examination, the Government's witness, Officer Elvin David, testified that he had seen the occupants of the van, including Dennis Blyden, come out of the van. On cross-examination, the following colloquy took place:

[BLYDEN'S COUNSEL]: Can you describe how the persons came out of the van?

THE COURT: I don't understand the question. They were ordered to come out with their hands above their heads.

[BLYDEN'S COUNSEL]: What door did they come out, if they came out all at once, did they stumble out or what?

THE COURT: I don't see any relevance in that, you need not answer that.

You may proceed or yield the witness.

[BLYDEN'S COUNSEL]: May I make a proffer?

THE COURT: No. The testimony was that they were ordered out and they came out. Whether they came out stumbling on their heads, on their hands, I don't see that it is relevant to the case.

■ Blyden's counsel suggests that she was going to elicit testimony from Officer David to determine whether Blyden had appeared to be in a sleepy state when he left the van. Since an answer indicating that Blyden had been half-asleep would have substantiated his story, Blyden asserts that the *sua sponte* act of the court in cutting off the cross-examination followed by its refusal of trial counsel's proffer was an abuse of discretion which denied him a fair trial. It has been said that "[t]he test to be applied by an appellate court where an offer [of proof] has been denied is whether any conceivable answer to the question would have been admissible." *Frisone v. United States*, 270 F.2d 401, 403 (9th

---

**3.** Isaac was unavailable as a witness so his written statement to the police was admitted at trial. In the Memorandum Supplementing Findings, *Government of the Virgin Islands v.*

*George*, Cr. No. 78–207 (D.V.I. Mar. 16, 1979), the district court concluded that even without Isaac's statement, the evidence clearly established the guilt of the defendants.

Cir. 1959). Although it might have been relevant to learn of Blyden's demeanor, in view of the evidence and Blyden's own testimony we find that the refusal of the proffer was harmless error, if in fact it was error at all. *See Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

Here there was sufficient evidence to link Blyden with the crime. Blyden testified that he fell asleep as the car was driven up the hill, allegedly to leave off another passenger. He admitted that he was staying on Vester Gade, about five minutes from the Frenchtown rally. Nevertheless, he rode in the van all the way to Altona where Isaac's house was located, a circuitous route for someone desiring to go home. He testified that he jumped up when the bright lights shone on the van and then he opened his eyes. At no point did Blyden testify that he had difficulty in orienting himself to what was happening after the police stopped the van. His orientation was demonstrated by his testimony as to the details of the occurrences immediately after the van was stopped, including the behavior of the police and the van occupants. Under these circumstances, the trial judge, who in this case was the trier of fact, could determine that Blyden's testimony lacked credibility in view of the contradictions of his own story, *see United States v. Mallah,* 503 F.2d 971, 978 (2d Cir. 1974), *cert. denied,* 420 U.S. 995, 95 S.Ct. 1425, 43 L.Ed.2d 671 (1975), and could find that he had not been sleeping during the entire trip, including the lengthy stop near Isaac's house when the items belonging to Isaac were placed in the van. The extent of cross-examination is within the sound discretion of the trial court and a restriction will not constitute reversible error unless it is so severe as to constitute a denial of the defendant's right to confront witnesses against him and it is prejudicial to substantial rights of the defendant. *United States v. Norman,* 402 F.2d 73, 76 (9th Cir. 1968), *cert. denied,* 397 U.S. 938, 90 S.Ct. 949, 25 L.Ed.2d 119 (1970).

■ Blyden and George both argue that there was insufficient evidence to convict them. They each stress that Isaac merely said he saw three or four persons moving about in the house but could not identify the specific persons because it was dark. However, even in the absence of any testimony specifically identifying them as persons who were actually in the Isaac home, they could be charged with unlawful entry on an aider and abettor theory.[4] Since they were both found in joint custody of the fruits of the crime, they could be considered to have sufficiently associated themselves with the venture to be aiders and abettors in the unlawful entry. *United States v. Barber,* 429 F.2d 1394, 1397 (3d Cir. 1970).

To avoid this result, defendants assert that mere passengers may not be convicted of knowing possession unless the evidence directly connected them with the contraband. They claim that their mere presence in the van was not sufficient. *See United States v. Zamora-Corona,* 465 F.2d 427 (9th Cir. 1972) (per curiam); *United States v. Nitti,* 444 F.2d 1056 (7th Cir. 1971). In the *Zamora-Corona* case, marijuana had been concealed in an automobile. There was no evidence that the passenger even knew of the existence of the contraband in the car and the court determined that his mere presence in the vehicle was not sufficient to sustain his conviction. *Nitti* concerned a passenger in the tractor portion of a tractor-trailer. The court found there was "not a scintilla of proof that [the passenger] . . . during the time he was . . . in the tractor or previously, touched or saw or had any knowledge of the stolen property carried in the trailer." 444 F.2d at 1059.

■ The facts in the instant case are substantially different from those in these two cases. Here the contraband was in full view of the passengers. Such recent possession of the fruits of the crime, if not satisfactorily explained, is a circumstance from which the inference may be drawn

---

4. V.I.Code Ann. tit. 14, § 11 (1964) provides that whoever aids or abets in the commission of a crime is punishable as a principal.

that the possession is guilty possession. *See Barnes v. United States*, 412 U.S. 837, 843–46, 93 S.Ct. 2357, 2361–63, 37 L.E.2d 380 (1973); *see also United States v. Kulp*, 365 F.Supp. 747, 767 (E.D.Pa.1973), *aff'd without opinion*, 497 F.2d 921 (3d Cir. 1974). Moreover, in view of the short period between the time when the items had been taken until the defendants had been apprehended, the court could infer that the defendants had been present at the time the property was taken. The totality of the circumstances, including the furtive manner in which the defendants were leaving the area of the crime, could indicate to the trier of fact that all passengers were involved in the theft of property from Isaac's dwelling. Additionally, although courts must employ care to see that speculation does not substitute for evidence, flight from the scene of the crime with the actual perpetrators of the crime would be a sufficient association with the enterprise to be held as an aider and abettor. *United States v. Barber*, 429 F.2d 1394, 1397 & n.4. (3d Cir. 1970). Here defendants were present during flight with the contraband in full view. The trier of fact could reject their claim that they were merely passengers.

We have also considered each of the other grounds raised by each appellant and find that none merits additional discussion. After consideration of all contentions raised by appellants, we hold that the district court did not err in finding Blyden and George guilty of unlawful entry and petty larceny and we will affirm the judgments of conviction.