**PEOPLE OF THE VIRGIN ISLANDS, Appellant/Plaintiff**
**v.**
**CHARMAINE CLARKE, Appellee/Defendant**

S. Ct. Crim. No. 2009-0104

Supreme Court of the Virgin Islands

April 12, 2011

PAUL J. PAQUIN, ESQ., Acting Solicitor General, St. Thomas, USVI, *Attorney for Appellant.*

DAVID J. CATTIE, ESQ., Ogletree, Deakins, Nash, Smock & Stewart, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(April 12, 2011)

HODGE, C.J. The People of the Virgin Islands appeal the September 21, 2009 Superior Court Order granting Charmaine Clarke's Motion for Judgment of Acquittal. Based on the evidence presented at trial, viewed in the light most favorable to the People, this Court holds that there was insufficient evidence to convict Clarke of aiding and abetting in the unauthorized possession of a firearm during the commission of a crime of violence, and we affirm the judgment of the Superior Court.

## I. STATEMENT OF RELEVANT FACTS AND PROCEDURAL POSTURE

In the late evening and early morning hours of May 17, 2008 and May 18, 2008, while being driven by a friend from Coki beach towards Red Hook, Malaika Pemberton claims that she heard several gunshots. At the time Pemberton claims she heard the gunshots, she was on Coki Beach Road at the point where it intersects with Smith Bay Road. After Pemberton's friend turned left onto Smith Bay Road — in front of the ballpark — Pemberton says she saw Issac Austrie running across the street holding a gun and attempting to tuck it into his waist. According to Pemberton, Austrie was running from the direction where a body, later determined to be Geffard Fritz, lay face down and motionless on the ground.[1] Austrie ran to the other side of the street and got into the passenger seat of a white Ford Focus. As Pemberton drove by she looked into the white Ford Focus and saw that Clarke was its driver.[2] Once Austrie was inside the vehicle, it sped away in the direction of Cassi Hill. After passing the car, Pemberton looked back and noticed that its license plate started with the letter "T" and ended with the numbers "566."[3]

On June 30, 2008, Pemberton viewed photo arrays consisting of six photos each and identified both Austrie and Clarke as the individuals she saw around the ballpark in Smith Bay on the night of the shooting. An autopsy of Fritz further revealed that he had sustained four gunshot wounds and died as a result thereof. The Virgin Islands Police Department also verified that Clarke owned a white Ford Focus with the license plate number "TCH-566" on the date of the incident. Finally, the police confirmed that neither Austrie nor Clarke is authorized to possess or carry a firearm in the Virgin Islands. Based on this evidence, the police arrested Austrie and Clarke on September 7, 2008.

In an Information dated February 24, 2009, the People charged Austrie and Clarke with first degree murder and unauthorized possession of a firearm during the commission of a crime of violence. The first trial ended in a mistrial on all counts, and the People tried Austrie and Clarke a

---

[1] Later that morning Detective Newton discovered Fritz's body near the ballpark in Smith Bay, and paramedics subsequently pronounced him dead.

[2] Pemberton has known Clarke for approximately ten years.

[3] The evidence later showed that Pemberton actually knew Clarke drove a white Ford Focus and its license plate number prior to that incident.

second time. At the close of evidence in the second trial, Clarke argued that the evidence presented was insufficient to convict her of the crimes charged and that the trial court should issue a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29.[4] The trial court reserved decision and allowed the case to go the jury. The jury was unable to reach a verdict on the first degree murder charge, but returned a verdict finding Austrie guilty of the unauthorized possession of a firearm during the commission of a crime of violence and Clarke guilty of aiding and abetting another in the unauthorized possession of a firearm during the commission of a crime of violence. Clarke subsequently renewed her Rule 29 motion for judgment of acquittal.

In a Memorandum Opinion and Order dated September 21, 2009, the trial court held that there was insufficient evidence to support the jury's verdict against Clarke. The trial court thus set aside the jury's guilty verdict and entered a judgment of acquittal. The People filed its timely notice of appeal on October 21, 2009.[5]

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

■ Prior to deciding the merits of the People's appeal, we must first determine if we have jurisdiction over this matter.[6] In a September 21, 2009 Memorandum Opinion and Order, the Superior Court dismissed the Information against Clarke. As such, the People cannot appeal this criminal judgment "unless statutory authority expressly and clearly permits such an appeal." *People v. George*, 49 V.I. 504, 507 (V.I. 2008).

---

[4] Federal Rule of Criminal Procedure 29 is made applicable to the Superior Court through Superior Court Rule 7. *See* SUPER. CT. R. 7 ("The practice and procedure in the Superior Court shall be governed by the Rule of the Superior Court and, to the extent not inconsistent therewith, by . . . the Federal Rules of Criminal Procedure . . . .").

[5] *See* V.I.S.CT.R. 5(b)(1).

[6] While the People's appeal was pending, this Court — in a June 23, 2010 Order — granted Clarke's motion for partial dismissal of the People's appeal for lack of jurisdiction. The Superior Court had originally granted Clarke's motion for judgment of acquittal with respect to the charge of murder in the first degree after declaring a mistrial due to the jury being unable to reach a verdict. Thus, reversing the Superior Court's judgment and ordering a new trial, in relation to the charge of murder in the first degree, would violate the Double Jeopardy Clause of the United State Constitution. *See United States v. Martin Linen Supply Co.*, 430 U.S. 564, 570, 97 S. Ct. 1349, 1354, 51 L. Ed. 2d 642 (1977).

"In the Virgin Islands, title 4, section 33(d) of the Virgin Islands Code provides the People with the statutory authority to appeal certain criminal judgments." *People v. Pratt*, 50 V.I. 318, 321 (V.I. 2008). Under 4 V.I.C. § 33(d)(1):

> In a criminal case an appeal by the Government of the Virgin Islands shall lie to the Supreme Court from a decision, judgment, or order of the Superior Court dismissing an indictment or information or otherwise terminating a prosecution in favor of the defendant, as to any one or more counts, or any part thereof, except that no appeal shall lie where the double jeopardy clause of the United States Constitution or the Revised Organic Act prohibits further prosecution.

Here, the Superior Court entered its judgment of acquittal after a verdict of guilty had been entered by the trier of fact. The People may, therefore, appeal from that ruling without subjecting the defendant to double jeopardy. *See Smith v. Massachusetts*, 543 U.S. 462, 467, 125 S. Ct. 1129, 1134, 160 L. Ed. 2d 914 (2005) ("When a jury returns a verdict of guilty and a trial judge (or an appellate court) sets aside that verdict and enters a judgment of acquittal, the Double Jeopardy Clause does not preclude a prosecution appeal to reinstate the jury verdict of guilty." (citing *United States v. Wilson*, 420 U.S. 332, 352-53, 95 S. Ct. 1013, 1026, 43 L. Ed. 2d 232 (1975))). Accordingly, this Court possesses jurisdiction over the People's appeal pursuant to 4 V.I.C. § 33(d)(1).

Our standard of review in examining the Superior Court's application of law is plenary, while findings of fact are reviewed only for clear error. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007). In reviewing a post-verdict motion for judgment of acquittal, a trial court must "review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence." *Brown v. People*, 54 V.I. 496, 504 (V.I. 2010) (citing *United States v. Gonzalez*, 918 F.2d 1129, 1132 (3d Cir. 1990)). The trial court is required to "draw all reasonable inferences in favor of the jury's verdict." *United States v. Anderskow*, 88 F.3d 245, 251 (3d Cir. 1996). Accordingly, this Court exercises plenary review of a trial court's grant of a post-verdict judgment of acquittal. *See United States v. Smith*, 294 F.3d 473, 477 (3d Cir. 2002).

## B. There was Insufficient Evidence to Support the Jury's Guilty Verdict Against Clarke for Aiding and Abetting in the Unauthorized Possession of a Firearm During the Commission of a Crime of Violence

■ On appeal, the People argue that the trial court erred in holding that there was insufficient evidence to support the jury verdict convicting Clarke of aiding and abetting in the unauthorized possession of a firearm during the commission of a crime of violence. Specifically, the People contend that Clarke's flight from the scene of the crime with Austrie, the alleged perpetrator of the crime, rationally supports the inference that Clarke aided and abetted Austrie in the unauthorized possession of a firearm during the commission of the charged offense of first degree murder.[7] The People's argument, however, is not supported by the evidence in the record. While Clarke's flight from the scene of the crime with Austrie immediately after the shooting may have allowed a reasonable juror to infer that Clarke had driven Austrie to the scene of the crime, there is nothing in the record to suggest that Clarke knew that Austrie possessed a gun or that she participated in the shooting of Fritz.[8]

---

[7] In support of this proposition, the People cite to *Government of the Virgin Islands v. Blyden*, 626 F.2d 310, 17 V.I. 623 (3d Cir. 1980). In *Blyden*, the Government established that the defendants were found ridding in a van that had been used in the burglary of a home shortly after the burglary, and that the stolen contraband from the home was in full view of the passengers. *Id.* at 311-12. Although the court noted in dicta that "flight from the scene of the crime with the actual perpetrators of the crime would be a sufficient association with the enterprise to be held as an aider and abettor," it ultimately upheld the defendants' convictions for aiding and abetting in unlawful entry because

> [s]uch recent possession of the fruits of the crime, if not satisfactorily explained, is a circumstance from which the inference may be drawn that the possession is guilty possession. Moreover, in view of the short period between the time when the items had been taken until the defendants had been apprehended, the court could infer that the defendants had been present at the time the property was taken. The totality of the circumstances, including the furtive manner in which the defendants were leaving the area of the crime, could indicate to the trier of fact that all passengers were involved in the theft of [the] property.

*Id.* at 314 (internal citations omitted). The facts and substantive charges in this case, however, are significantly different from those in *Blyden*. As such, we find that *Blyden* is not directly applicable.

[8] Austrie was never convicted for the murder of Fritz, and this Court expresses no opinion regarding this case as it relates to Austrie. Instead, we merely acknowledge, for the purpose of Clarke's appeal only, that based on the evidence presented at trial, viewed in the light most

■ In Count Four of the Information, the People charged Clarke with "aiding and abetting" pursuant to 14 V.I.C. § 11, in conjunction with the substantive offense, unauthorized possession of a firearm during the commission of a murder.[9] Under title 14, section 11(a), "[w]hoever commits a crime or offense or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." Establishing the offense of aiding and abetting requires the People to prove (1) that the substantive crime has been committed, and (2) the defendant knew of the crime and attempted to facilitate it. *Brown*, 54 V.I. at 500. In addition, the People must prove that the "defendant associated himself with the venture, that he participated in it as something he wished to bring about, and that he sought by his words or action to make it succeed." *Nanton v. People*, 52 V.I. 466, 484 (V.I. 2009) (quoting *United States v. Xavier*, 2 F.3d 1281, 1288, 29 V.I. 279 (3d Cir. 1993)). "Thus, liability for aiding and abetting someone else in the commission of a crime requires the specific intent of facilitating the crime, and mere knowledge of the underlying offense is not sufficient for conviction." *United States v. Garth*, 188 F.3d 99, 113 (3d Cir. 1999). As such, in order for the jury's verdict to stand on Count Four, there must be sufficient evidence that Clarke aided and abetted Austrie in the *unauthorized possession of a firearm* during the murder of Fritz. *See United States v. Gordon*, 290 F.3d 539, 547 (3d Cir. 2002) ("To establish liability for a crime based on an aiding and abetting theory, the government must prove that the underlying crime occurred and that the defendant knew of the crime and attempted to facilitate it." (quoting *Garth*, 188 F.3d at 113)).[10]

---

favorable to the People, a reasonable trier of fact could have concluded that Austrie was involved in the shooting incident that resulted in the death of Fritz.

[9] 14 V.I.C. § 2253(a).

[10] In this case, Clarke was charged and convicted for aiding and abetting in the unauthorized possession of a firearm during the commission of a crime of violence. Thus, the substantive crime is the unauthorized possession of a firearm during the commission of a crime of violence, which requires proof that someone 1) committed a crime statutorily defined as "a crime of violence," and 2) possessed a firearm without authorization during that crime's commission. And in order to convict an individual of aiding and abetting in this crime, the People must prove first, that the individual knew of the crime — 1) knew the principal was going to commit the crime of violence and 2) knew the principal was going to possess a firearm in that crime — and second, that the individual attempted to facilitate the crime — 1) attempted to facilitate the crime of violence and 2) attempted to facilitate the possession of the firearm.

As an example of sufficient evidence to prove aiding and abetting, in *Gordon*, the defendant was found guilty of various charges for his participation in seven bank robberies. *Id.* at 541.[11] On appeal, the defendant argued that there was insufficient evidence to find him guilty of aiding and abetting in the carrying and use of a firearm during a crime of violence for three of the robberies. *Id.* at 547. He claimed that in regards to those specific robberies, the evidence only proved that he was the driver of the car and not that he knew a firearm was to be used in any of those robberies. *Id.* The Third Circuit rejected this argument and held that there was sufficient evidence to find the defendant guilty based on his involvement and execution in each of the seven robberies. The court stated:

> Although [Defendant] was not in the bank for any of the robberies listed in the counts he challenges on this ground, the evidence presented to the jury was sufficient as a whole to show a pattern to the bank robberies that makes clear that **[Defendant] not only knew that a gun would be used but that he attempted to facilitate the carrying of a gun**, wished to bring about or make the crime succeed, and that the gun was instrumental to his decision to participate.

> Each of the seven charged robberies involved a combination of the same group of people who took turns filling in the roles necessary for the robbery. [Defendant] himself went into the bank and brandished a weapon on four of those occasions. In addition, there was specific evidence that the use of firearms was discussed during the planning stage of the crimes and that [Defendant] was in a position to observe the actual use of a firearm in at least several of the robberies.

*Id.* at 547-48 (emphasis added). Similarly, in *United States v. Price*, the defendant robbed a bank with another individual named Stubbs, but never handled the gun. 76 F.3d 526, 527 (3d Cir. 1996). While Stubbs pointed a gun at a teller, the defendant jumped over the counter and removed money from the bank drawers. *Id.* The Third Circuit upheld his conviction for aiding and abetting in the possession of a firearm during the commission of a

---

[11] Each of the seven bank robberies occurred on different dates and spanned over a period of two years. *United States v. Gordon*, 290 F.3d 539, 541-42 (3d Cir. 2002).

violent crime because a reasonable jury could infer that the defendant had prior knowledge that Stubbs was planning to use and carry the gun during the robbery, and that both Stubbs and the defendant's roles in the crime were facilitated by the fact that Stubbs brandished a gun while the defendant scooped up the money. *Id.* at 529-30. The actions of each furthered the actions of the other, and the robbery succeeded because of the combined actions of both. *Id.*

In contrast, there is a total absence of evidence in this case that Clarke knew that Austrie possessed a firearm, much less that he intended to use the firearm during the commission of a murder. The evidence presented at trial, viewed in the light most favorable to the People, was sufficient to allow a reasonable trier of fact to find that: 1) Austrie was present near the ballpark in Smith Bay where Fritz's dead body was discovered at the time several gunshots were fired; 2) Austrie was in possession of a gun; 3) Clarke was parked across the street in her car at the time the shots were fired; and 4) Austrie was driven away from the ballpark by Clarke immediately after the shots were fired. Viewing this evidence in the light most favorable to the People, as the standard of review requires, the jury could have reasonably inferred that: 1) Austrie shot and killed Fritz near the ballpark in Smith Bay;[12] 2) Clarke drove Austrie to the scene of the crime and was waiting for him across the street; and 3) Clarke helped Austrie flee from the scene of the crime after the shooting. There is no evidence, however, which would have allowed the jury to reasonably infer that Clarke was aware that Austrie was in possession of a firearm prior to the shooting or that Clarke knew Austrie intended to shoot Fritz. *See State v. Gazerro,* 420 A.2d 816, 828-29 (R.I. 1980) (holding defendant's mere presence as driver of vehicle in which one passenger shot and killed another was insufficient to prove defendant aided and abetted the commission of the crime despite inference that defendant subsequently slowed or stopped vehicle so that victim could be pushed out of the car). Reaching that conclusion requires drawing one

---

[12] Immediately after hearing the gunshots Pemberton saw Austrie holding a gun and running from the direction where a body, later determined to be Fritz, lay face down and motionless on the ground. Again, however, Austrie was never convicted for the murder of Fritz, and our current analysis relates only to whether there was sufficient evidence, viewed in the light most favorable to the People, upon which a reasonable trier of fact could have convicted Clarke of aiding and abetting in the possession of a firearm during the commission of a crime of violence. *See* note 8 *supra.*

inference upon another. First, the jury would have to infer that Clarke drove Austrie to the scene of the crime based on the evidence that she was parked across the street at the time of the shooting and drove Austrie away immediately after. The jury would then have to infer that Clarke knew Austrie possessed a firearm based solely on the previous inference that she had driven him to the scene of the crime. Finally, the jury would have to infer that Clarke knew Austrie intended to use that firearm to murder Fritz based on the inference — which itself is based on an inference — that Clarke knew Austrie possessed a gun. The drawing of one inference upon another to reach this conclusion is entirely too tenuous, and goes beyond reasonable inferences to mere speculation. *See United States v. Silveus*, 542 F.3d 993, 1004, 50 V.I. 1101 (3d Cir. 2008) (holding evidence must rise above mere speculation); *United States v. Pettigrew*, 77 F.3d 1500, 1521 (5th Cir. 1996) ("[A] verdict may not rest on mere suspicion, speculation, or conjecture, or on an overly attenuated piling of inference on inference."); *United States v. Camiel*, 689 F.2d 31, 36 (3d Cir. 1982) (stating that an appellate court must find "substantial evidence, viewed in the light most favorable to the Government, to uphold the jury's decision." (quoting *Burks v. United States*, 437 U.S. 1, 17, 98 S. Ct. 2141, 2150, 57 L. Ed. 2d 1 (1978))).

Instead, this case is very analogous to *Garth*. In *Garth*, four males were stopped by police in a Philadelphia train station as they attempted to purchase tickets for a train to Baltimore. *Garth*, 188 F.3d at 103. The four individuals had entered the train station together and were carrying two bags between the four of them. *Id.* A subsequent search of one of the bags revealed a large quantity of cocaine base and a loaded firearm. *Id.*[13] It was later determined that the four individuals were transporting the cocaine base to sell in West Virginia. *Id.* On appeal, the Third Circuit held that this evidence was insufficient to prove that the defendant aided and abetted in the use and/or carrying of a firearm during a drug trafficking crime. *Id.* at 113. The court reasoned:

> [A]lthough a reasonable juror could infer that the four men came to the train station in some kind of vehicle, and that the gun was in the vehicle

---

[13] The People never alleged, and there was no evidence, that the defendant ever actually carried the bag which contained the drugs and firearm while in the train station. *United States v. Garth*, 188 F.3d 99, 103-04 (3d Cir. 1999).

that brought them to the train station, there is nothing in the record to suggest that [the defendant] knew that the gun was present until they got to the train station.[14]

*Id.* at 111. Thus, the court concluded that there was "no evidence that [the defendant] attempted to facilitate the carrying of the gun, that he wished to bring about or make that offense succeed, or that the gun was in any way instrumental to his decision to participate in the drug offense." *Id.* at 114.

Even viewing the evidence presented in the light most favorable to the People, it is clear that the People failed to present "substantial" evidence that Clarke aided, abetted, counseled, commanded, induced or procured Austrie in the unauthorized possession of a firearm during the commission of a crime of violence, first degree murder. *See id.* (requiring Government to prove defendant knew principal possessed firearm). Here, linking Clarke to the firearm was necessary. *See United States v. Sorrells*, 145 F.3d 744, 753-54 (5th Cir. 1998) ("[I]n order to be convicted of aiding and abetting the [use or carrying of a firearm] offense . . . the defendant must act with the knowledge or specific intent of advancing the 'use' of the firearm in relation to the [underlying] offense. . . . In addition to requiring proof of knowledge or intent for a conviction of aiding and abetting, 'there must also be proof that the defendant performed some affirmative act relating to the firearm.' . . . The link to the firearm is necessary because the defendant is punished as a principal for 'using' a firearm in relation to [another] offense, and therefore must facilitate in the 'use' of the firearm rather than simply assist in the crime underlying the [use or carrying of a firearm] violation."). And because the People presented no evidence that Clarke knew or facilitated Austrie's possession of the firearm, the trial court correctly granted Clarke's motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. *See Garth*, 188 F.3d at 114.[15]

---

[14] The defendant claimed that he was unaware that one of the other individuals had brought a firearm until they were entering the train station. *Id.* at 103.

[15] In Appellee's Brief, Clarke argues that her conviction could have been set aside based solely on the grounds that the jury failed to convict Austrie or herself of the predicate crime of violence. This argument, however, is in direct contradiction to established Supreme Court precedent. *See United States v. Powell*, 469 U.S. 57, 65-69, 105 S. Ct. 471, 476-79, 83 L. Ed. 2d 461 (1984). Clarke also contends — it appears in anticipation of the People's argument — that this Court should not allow her conviction for aiding and abetting in the unauthorized

## III. CONCLUSION

The evidence presented at trial was insufficient to allow a jury to reasonably infer that Clarke knew Austrie was in possession of a firearm or that she participated in the murder of Fritz. We therefore affirm the judgment of the trial court setting aside the jury's verdict and granting Clarke's motion for judgment of acquittal.

---

use of a firearm during the commission of a crime of violence to be converted into aiding and abetting in the simple possession of a firearm. The People, however, failed to raise this issue until oral arguments. We will, therefore, not address this issue. *See Redd v. McGrath*, 343 F.3d 1077, 1081 n.6 (9th Cir. 2003) (holding state waived argument raised for first time during oral arguments by failing to raise it in court below or in its appellate brief).