# JAMAL D. TODMAN, Appellant/Defendant
## v.
# PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff

S.Ct. Criminal No. 2011-0030

Supreme Court of the Virgin Islands

September 13, 2013

DANIEL GRAVEL, ESQ., and NYCOLE A. THOMPSON ESQ., BoltNagi PC, St. Thomas, USVI, *Attorneys for Appellant.*

BERNARD M. VANSLUYTMAN, ESQ., Solicitor General, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.* HODGE, *Chief Justice*, concurring.

## OPINION OF THE COURT

(September 13, 2013)

SWAN, *Associate Justice.* Jamal D. Todman ("Todman"), Appellant, was charged in a one-count Amended Information with aiding and abetting in the unlawful possession of a firearm in violation of 14 V.I.C. § 2253(a) and 14 V.I.C. § 11(a). A jury found him guilty, and this timely appeal ensued. After considering the final jury instructions and the charge in the Amended Information, we conclude that the evidence presented by the People was insufficient for a reasonable jury to have found beyond a reasonable doubt that Todman aided and abetted anyone in the unlawful possession of a firearm. Therefore, we reverse his conviction.

## I. FACTS AND PROCEDURAL HISTORY

On May 1, 2009, Todman attended the horse races at the Clinton E. Phipps Race Track located in Estate Bovoni on St. Thomas. After the horse races, Todman telephoned his then girlfriend, Tiffany Smith-Reynolds ("Smith"), to come for him. After receiving Todman's call,

Smith, who at the time lived within walking distance of the race track, drove to her Estate Bovoni home and parked in her driveway. (J.A. at 583.) Todman walked the short distance from the race track to Smith's house, and they both entered Smith's vehicle, with Smith occupying the front passenger seat and Todman occupying the driver's seat. Todman and Smith proceeded to drive away from the racetrack toward the area known as Nadir Circle, but they were impeded by heavy traffic caused by the race track patrons simultaneously attempting to depart the race track. As they proceeded through the congested traffic, Todman and Smith exchanged pleasantries with numerous acquaintances. (J.A. at 587.)

What happened next is stridently contested by both parties. Initially, Smith told police investigators that she and Todman were the only persons in the vehicle at the time of the shooting which gave rise to the present charges. (J.A. at 619-21.) However, at trial, Smith testified that as they attempted to depart the Nadir Area they encountered an acquaintance of Todman by the name of Marley near an overpass in the area colloquially referred to as "the bridge to nowhere." Marley asked Todman for a ride to the Fort Mylner Shopping Center and Todman agreed. According to Todman's testimony, Marley entered the vehicle and sat behind the passenger seat.[1] (J.A. at 402.) Todman continued to drive through traffic and encountered another acquaintance by the name of Ikim Blackette ("Blackette") standing next to a food van. (*Id.* at 402-03.) Blackette approached the car, leaned down on the driver's side window and greeted Todman. (*Id.* at 947-48.) Blackette noticed Smith in the passenger seat and a man seated behind her. (*Id.*) Blackette witnessed Smith's car departing the area, after he conversed briefly with Todman. (*Id.*)

According to testimony from both Smith and Todman, Smith was conversing with Todman in the congested traffic when she noticed a man at the driver's side window pointing a gun into the car. (*Id.* at 588.) Observing the look of horror on Smith's face, Todman turned toward the driver's window and also saw the gunman pointing a gun at his chest. Todman asserts that an altercation immediately ensued between himself and the gunman at the vehicle's window during which Todman held the

---

[1] The People dispute the presence of Marley in the car at the time of the incident. The authorities were never able to make contact with Marley, and the People believe that the story of Marley's involvement was created by Todman and Smith in an attempt to possibly attribute possession of the weapon to Marley.

barrel of the gun and was immediately shot. Todman was shot in both arms and bullets also grazed his chest and back. Todman lost control of the vehicle, as a barrage of bullets struck the vehicle.

What happened to the gun that was used to shoot Todman is also the subject of much dispute between the parties. Initially, Todman stated that the gun used to shoot him fell into the vehicle and was subsequently recovered by the police. (J.A. at 408.) However, Todman subsequently suggested that the gun recovered from Smith's vehicle belonged to Marley, the alleged passenger in the back seat.

On the day of the shooting, Fitzroy Tutein, ("Tutein"), a member of the National Guard, was at Nadir Circle directing traffic when he observed three men running alongside Smith's vehicle. (*Id.* at 150.) Tutein testified that he observed at least two of the three men discharging shots into Smith's vehicle. (*Id.* at 151.) Tutein did not observe any return gunshots from Smith's vehicle. (*Id.* at 159.) After the shooting, Tutein saw the gunmen run away with their weapons. (*Id.* at 161.) When Todman lost control of the vehicle during the shooting, it collided into a BMW vehicle. The driver of the BMW became irate and began to verbally abuse Todman and Smith because of the collision. (*Id.* at 154-55.) Smith urged the driver of the BMW to move the vehicle in order for Smith to transport Todman to the hospital. Once Todman was inside the hospital, his clothes were removed to prepare him for surgery and a gun holster was found among his clothing. (*Id.* at 171).

While Smith and Todman were inside the hospital, police arrived and proceeded to search Smith's vehicle. A firearm with its hammer in a jammed position was found behind the front passenger seat. (J.A. at 70.) In addition to the firearm recovered from Smith's vehicle, the police recovered a denim bag containing ammunition. (*Id.* at 209-10.)

Both Todman and Smith were questioned by police detectives about the shooting. When questioned by Detective Margaret Price about the gun that she recovered from inside the vehicle, Todman asserted that he had no knowledge of the gun and offered the suggestion that it possibly may have fallen into the vehicle after being dropped by one of the shooters. (*Id.* at 408.) Todman also admitted to Detective Price that he did not possess a license to carry a firearm. (*Id.* at 408.)

Several months after the shooting, Smith and Todman were arrested and charged with unauthorized possession of a firearm and possession of stolen property. Smith was also charged with the possession of a

controlled substance. The charges of unauthorized possession of stolen property and unauthorized possession of a firearm were subsequently dismissed with prejudice against Smith. The possession of stolen property charge was subsequently dismissed against Todman. In an Amended Information, the People charged Todman with one count of aiding and abetting in the unauthorized possession of a firearm, in violation of 14 V.I.C. §§ 11(a) and 2253(a). (J.A. at 4-5.)

At trial, the People presented evidence that suggested that Todman was the primary actor in the crime of unauthorized possession of a firearm. Elfreda Robinson, who was the director of firearm licensing for the District of St. Thomas/St. John/Water Island ("St. Thomas District") testified about the search of the police record on firearm registration for both St. Thomas and St. Croix. Robinson also testified concerning a certificate of non-record of firearm certifying that Smith is not licensed to carry a firearm in the St. Thomas District. (*Id.* at 112-13.) No certificate of non-record was admitted into evidence concerning Smith not having a license to carry a firearm in the District of St. Croix, and Robinson did not testify on the issue. (*Id.*) No other evidence was presented concerning Smith's role in the crime.

After closing arguments, the trial judge instructed the jury on what was required for a finding of guilt on the charge of aiding and abetting in the unauthorized possession of a firearm. In addition to the elements of the offense, the trial judge instructed the jury that to convict Todman, they must find that he aided and abetted another person. (*Id.* at 1041, 1045.) The jury returned a guilty verdict on the charge of aiding and abetting in the unauthorized possession of a firearm. Prior to sentencing, the defense moved for a judgment of acquittal or alternatively a new trial, which request was denied. (J.A at 7.) Todman was sentenced to fifteen years imprisonment with all but three years suspended, and was credited 97 days for time already served in pre-trial incarceration. He was also fined $25,000 with the entire fine suspended and assessed $75 in court costs. This timely appeal ensued.

## II. JURISDICTION

Title 4, section 32(a) of the Virgin Islands Code provides, in pertinent part, that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." In a criminal case, "the written

judgment embodying the adjudication of guilt and the sentence imposed based on that adjudication constitutes a final judgment." *Williams v. People*, 58 V.I. 341, 345 (V.I. 2013) (citing cases). Accordingly, we have jurisdiction over this appeal.

## III. ISSUES

On appeal, Todman advances the following issues, namely: A) whether the trial court violated his right to confront witnesses against him by admitting a certificate of non-record into evidence without having the preparer of that certificate to personally testify, B) whether the prosecutor's statements during closing arguments allegedly regarding credibility were improper, and C) whether there was sufficient evidence to convict Todman of the charge of aiding and abetting the unlawful possession of a firearm. Because we find that Todman's conviction requires reversal for insufficiency of the evidence, we do not address the additional issues. *See Chinnery v. People*, 55 V.I. 508, 524 (V.I. 2011).

## IV. STANDARD OF REVIEW

In considering the legal sufficiency of the final jury instructions, we review for plain error when counsel fails to object to an instruction at trial. *Jackson-Flavius v. People*, 57 V.I. 716, 721 (V.I. 2012); *United States v. Zehrbach*, 47 F.3d 1252, 1260 (3d Cir. 1995). "Where a party has not made a clear, specific objection to a charge that he alleges is erroneous at trial, he waives the issue on appeal unless the error was so fundamental and highly prejudicial as to constitute plain error." *Zehrbach*, 47 F.3d at 1260 n.6 (internal quotation marks and citation omitted). Plain error is established where there is: (1) error, (2) that is plain, and (3) that affects substantial rights. *Ward v. People*, 58 V.I. 277 (2013).

A review of the sufficiency of the evidence to support a conviction involves substantial deference to the findings of the trier of fact. "[I]t is the responsibility of the jury — not the court — to decide what conclusions should be drawn from evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. ___, 132 S. Ct. 2, 4, 181 L. Ed. 2d 311 (2011) (citation omitted). We may set aside a jury's factual findings only if no rational trier of fact could have agreed with the jury based on the trial record. *People v. Clarke*, 55 V.I. 473, 477 (V.I. 2011). The sufficiency of the evidence to convict is afforded plenary review, and in exercising that review the facts must be interpreted in a light most favorable to the

government. *Id. See also United States. v. Bornman*, 559 F.3d 150, 152, 51 V.I. 1170 (3d Cir. 2009); *United States v. Taftsiou*, 144 F.3d 287, 290 (3d Cir. 1998).

We review de novo issues of law affecting a defendant's rights under the United States Constitution. *Francis v. People*, 54 V.I. 313, 317 (V.I. 2010); *Latalladi v. People*, 51 V.I. 137, 141 (V.I. 2009). We afford a deferential clear error review to the trial court's factual determinations. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007).

## V. DISCUSSION

### A. The evidence elicited at trial was not sufficient to uphold the verdict

■ Todman argues on appeal that the evidence adduced at trial was insufficient to support a finding beyond a reasonable doubt that he aided and abetted in the unlicensed possession of a firearm. In reviewing the sufficiency of the evidence to support a conviction, the trial court's judgment must be sustained if, after viewing the evidence in a light most favorable to the government, a reasonable trier of fact could find the defendant guilty of every element of the offense beyond a reasonable doubt. *Sullivan v. Louisiana*, 508 U.S. 275, 277-78, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993). *See also Fahie v. Government of the V.I.*, 273 F. Supp. 2d 657, 659 (D.V.I. App. Div. 2011). We must be particularly deferential when determining whether a jury verdict rests on insufficient evidence, because as a reviewing court we may not usurp the role of the jury by re-weighing the evidence and re-assessing the credibility of witnesses. *United States v. Boria*, 592 F.3d 476, 480 (3d Cir. 2010) (citing *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005). Although a reviewing court must provide substantial deference to the factual finding of the lower court, we note that a verdict may not rest merely upon suspicion, speculation, or conjecture or any overly attenuated piling of inference on inference. *Clarke*, 55 V.I. at 482.

The People presented its case to the jury consistent with Todman as the primary actor, and all the evidence presented would tend to suggest to a reasonable jury that Todman was guilty as the primary perpetrator of the

crime of the unauthorized carrying of a firearm.[2] In viewing the evidence in a light most favorable to the People, there exists evidence from which a reasonable juror could infer that Todman, himself, had the power and intent to exercise dominion and control over the weapon. The firearm was found in Smith's car, a vehicle that both Smith and Todman often utilized and were occupying during the "Nadir Circle shoot-out." Also found in the vehicle was a denim bag filled with ammunition that can be discharged from the gun retrieved from Smith's vehicle. The most compelling evidence against Todman was a gun holster found attached to the waistband of Todman's trousers when hospital personnel removed his clothing in preparation for his surgery. The jury heard testimony from a weapons expert that the same holster could be used to accommodate the gun found in Smith's vehicle. Further, the jury heard testimony of Todman's admission to not having a license to carry a firearm. A reasonable juror could infer from these circumstances that Todman had the power and intent to exercise control over the gun or firearm found in Smith's vehicle.

The People's case suggests that Todman, by himself and without consort of any other individual, possessed the firearm found in Smith's vehicle. However, Todman was charged as a principal under 14 V.I.C. § 11, the aiding and abetting statute, and not as the primary perpetrator of the crime, thus adding an unnecessary element to the offense. The charging of Todman as an aider and abettor when all the evidence demonstrated that he was possibly the primary actor, made the proceedings unnecessarily confusing, and imposed specific burdens of

---

[2] Todman was charged and convicted under 14 V.I.C § 2253(a) which states that:

> Whoever, unless otherwise authorized by law, has, possesses, bears, transports or carries either, actually or constructively, openly or concealed any firearm, as defined in Title 23, section 451(d) of this code, loaded or unloaded, may be arrested without a warrant, and shall be sentenced to imprisonment of not less than one year nor more than five years and shall be fined not less than $5,000 nor more than $15,000 or both the fine and imprisonment, except that if such person shall have been convicted of a felony in any state, territory, or federal court of the United States, or if such firearm or an imitation thereof was had, possessed, borne, transported or carried by or under the proximate control of such person during the commission or attempted commission of a crime of violence, as defined in subsection (d) hereof, then such person shall be fined $25,000 and imprisoned not less than fifteen (15) years nor more than twenty (20) years. The foregoing applicable penalties provided for violation of this section shall be in addition to the penalty provided for the commission of, or attempt to commit, the felony or crime of violence.

proof upon the People that were not satisfied by the evidence offered at this trial.[3]

In interpreting 18 U.S.C. § 2, the model statute for 14 V.I.C. § 11, the United States Court of Appeals for the Third Circuit held that a person charged as a principal may be convicted as an aider and abettor. *United States v. Standefer*, 610 F.2d 1076, 1083-84 (3d Cir. 1979). It is universally held among the federal circuit courts that aiding and abetting is a lesser included offense of every charge, and that a defendant can be charged as a principal and convicted as an aider and abettor. *See United States. v. Salazar*, 983 F.2d 778, 782 (7th Cir. 1993) ("It is permissible to charge a defendant as a principal . . . and to convict him or her as an aider and abettor even though the indictment has made no reference" to the aider and abettor statute); *United States v. Clark*, 980 F.2d 1143, 1146 (8th Cir. 1992); *United States v. Sabatino*, 943 F.2d 94, 99 (1st Cir. 1991) ("aider and abettor charge is implicit in all indictments for substantive offenses, so it need not be specifically pleaded for an aiding and abetting conviction to be returned"); *United States v. Iglesias*, 915 F.2d 1524, 1528 (11th Cir. 1990). However, the reverse situation, involving whether a defendant can be charged as an aider and abettor and convicted on evidence establishing the defendant's role as the primary perpetrator of the crime, is not so well-established.

Only a few federal circuit courts have addressed the reverse situation, present in this case, where the defendant was charged as an aider and abettor and convicted as a principal. Some courts hold that a defendant charged with aiding and abetting may be convicted upon evidence showing guilt as a principal. *See United States v. Garcia-Nunez*, 709 F.2d 559, 562 (9th Cir. 1983). *See also United States v. Rodgers*, 419 F.2d 1315, 1317 (10th Cir. 1969) (aider and abettor may be charged and convicted as a principal); and *United States v. Bell*, 457 F.2d 1231, 1235 (5th Cir. 1972) (an aider and abettor is a principal and can be punished as such). In *Bell*, the court confirmed the proposition that one charged as an aider and abettor could be found guilty as a principal. It rejected the contention that the defendant could not be convicted as a principal under a count charging him solely as an aider and abettor, holding: "While the

---

[3] We recently admonished the People for a similar discrepancy in *Fontaine v. People*, 56 V.I. 571, 579-80 (V.I. 2012). However, we declined to address *sua sponte* the ramifications of the confusion caused by the discrepancy in that case.

better practice would have been to frame the charge in the alternative, the contention is without merit. Under 18 U.S.C. § 2 (1969) (see now 2006 & Supp. V 2011) an aider and abettor is a principal and can be punished as such." 457 F.2d at 1235.

Case law suggests that the variance between the charges in the Amended Information and the offer of proof at trial would not ordinarily warrant a reversal of Todman's convictions. Indeed, we have noted that "[t]he government is not required to prove precisely which defendant actually committed the crime and which defendant aided and abetted." *Boston v. People*, 56 V.I. 634, 644 n.10 (V.I. 2012) (quoting *Altamirano v. Gonzales*, 427 F.3d 586, 594 n.8 (9th Cir. 2005). However, it is apparent from the trial record that the exasperating discrepancy and variance between the offenses charged in the Amended Information and the proof actually offered at trial caused a number of conflicts and concerns. Plain error is manifest in this case because of the discrepancy in the charging of Todman coupled with the very specific final instructions given to the jury that they must find aiding and abetting as an element of the offense to convict.

■ Importantly, in reviewing the sufficiency of evidence to support a conviction for the specific charge of aiding and abetting in the unauthorized possession of a firearm in this jurisdiction, we have held that the evidence fails where "there is nothing in the record to suggest that [the defendant] knew that [another person nearby] possessed a gun." *Clarke*, 55 V.I. at 478. We have expressly held that "[e]stablishing the offense of aiding and abetting requires the People to prove (1) that the substantive crime has been committed, and (2) the defendant knew of the crime and attempted to facilitate it." *Id.* at 479 (internal citation omitted). "In addition, the People must prove that the 'defendant associated himself with the venture, that he participated in it as something he wished to bring about, and that he sought by his words or action to make it succeed.' " *Id.* (quoting *Nanton v. People*, 52 V.I. 466, 484 (V.I. 2009)). Thus, "in order for the jury's verdict to stand . . . there must be sufficient evidence that [the defendant] aided and abetted [a named person] in the unauthorized possession of a firearm." *Id.* (citing *United States v. Gordon*, 290 F.3d 539, 547 (3d Cir. 2002) ("To establish liability for a crime based on an aiding and abetting theory, the government must prove that the underlying crime occurred and that the defendant knew of the crime and attempted to facilitate it")). This accords with the law of other jurisdictions that one

cannot be guilty of aiding and abetting in the commission of a crime until it has been established that someone has committed that crime. *See, e.g., Rodgers*, 419 F.2d at 1317.

The requirement that the underlying crime be committed by another is made more applicable in this case because the People did not object to the jury instruction given here that required the prosecution to prove beyond a reasonable doubt that all of the elements of the underlying offenses were committed "by some person or persons and that the Defendant aided and abetted in the commission of the crime."[4] The trial court instructed the jury that in order to find Todman guilty as charged in Count I:

> The People *must prove* each of the following elements beyond a reasonable doubt. One: On or about May 1, 2009, on St. Thomas, U.S. Virgin Islands; Two: *Jamal Daniel Todman, Three: Aiding and abetting another person*; Four: Had, bore, possessed, carried or transported under his proximate control; Five: Either actually or constructively; Six: Either loaded or unloaded; Seven: Either openly or concealed; Eight: A firearm as defined in 23 Virgin Islands Code 451, Nine: At a time when he was not authorized by law to do so.

(J.A. at 1041-42) (emphasis added).

■ The charging of Todman as an aider and abettor added an unnecessary element to the offense that the jury was instructed by the trial court that it *must* find in order to convict Todman. The trial court succinctly and explicitly instructed the jury that: "*the people must prove beyond a reasonable doubt that all of the elements of the offense were committed by some person or persons and that the defendant aided and abetted the commission of the crime.*" (J.A. at 1045) (emphasis added). Importantly, the final instructions do not make clear to the jury that Todman could also be found guilty as charged if the evidence suggests that he was the primary actor or otherwise acted independently in the offense as charged. The jury was not given any option to find that Todman was a principal or primary actor, nor did the trial court instruct the jury on the elements needed to find Todman guilty as a primary actor. The trial

---

[4] This instruction is similar to Third Circuit Model Jury Instructions (Criminal) Number 7.02, which states that it is one of the required elements for a guilty verdict on an aiding and abetting charge that a named person committed the crime as a principal.

court instructed the jury that in order to convict it must find as an element of the offense that Todman aided and abetted another person or persons in the unlawful possession of the firearm. Where a trial court instructs, as it has here, that aiding and abetting is a part of the elements of the crime, the People must prove beyond a reasonable doubt that the defendant aided and abetted another in accordance with the court's instruction. *Brown v. People*, 54 V.I. 496, 505-06 (V.I. 2010). The People made no objection to the form of instruction given in this case. Thus, the People were required to prove beyond a reasonable doubt that Todman aided and abetted another in the unlawful possession of a firearm.

■ The sufficiency of the evidence actually presented by the People was clearly insufficient under the charged standards. Although the Amended Information fails to identify exactly whom Todman is charged with aiding and abetting, the only individual whose involvement is supported on the present record was Smith, the front-seat passenger and Todman's girlfriend at the time. Therefore, the People were required to prove that Smith committed the offense, that Todman knew of Smith's attempt to commit the offense, and that Todman had the specific intent to facilitate or aid and abet the crime. *Brown*, 54 V.I. at 505-06. *See also Clarke*, 55 V.I. at 478-79.

We cannot conclude that the evidence presented at trial was sufficient for a reasonable jury to find that Smith, Todman's girlfriend, possessed the weapon, either actually or constructively, or that the jury could reasonably find that she was not licensed to carry a firearm in the territory. All charges against Smith were dismissed; therefore, she was never tried as an accused nor proven to have been a participant in the crime of unauthorized possession of a firearm. The People presented evidence that Smith did not have a license to possess a firearm in the St. Thomas District. (J.A. at 112-13). However, no evidence was presented to verify that Smith was unlicensed to carry a firearm in the St. Croix District. Significantly, no evidence was presented at trial which demonstrated that Smith possessed the firearm, either actually or constructively. Further, there was no testimony presented that could establish Smith's knowledge of the existence of the firearm in the vehicle.

The only evidence that the jury heard that could connect Smith to the firearm was that ammunition was found in the vehicle in a denim bag. The jury heard no testimony, circumstantial or otherwise, that the denim bag belonged to Smith. The existence of a denim bag full of ammunition, even

when combined with the other evidence in this case, can hardly be said to prove Smith's role in the crime beyond a reasonable doubt.

■ A criminal defendant has a well-founded right to have a jury verdict that is based on proof beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 478, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). Todman's conviction required an element which, as a matter of law, the jury could not have found beyond a reasonable doubt, and thus is plainly erroneous and violative of his substantial rights. Accordingly, because the trial court instructed that the jury must specifically and expressly find beyond a reasonable doubt that Todman aided and abetted another individual in the unlawful possession of a firearm, and because the evidence presented at trial was insufficient to support a finding by the jury that Todman aided and abetted anyone, we reverse the conviction.

## VI. CONCLUSION

Todman's conviction must be reversed because the evidence is insufficient to demonstrate that he aided and abetted anybody in the crime of unauthorized possession of a firearm. The inartful charging of Todman as an aider and abettor when the People's case-in-chief demonstrated that he was possibly the sole and primary actor in the crime imposed upon the People a specific burden of proof, which the judge embodied in the instructions, to which the People did not object, thus making the obligation the law of this case. Although an aider and abettor may ordinarily be charged and convicted as a principal, the jury in this case was instructed that it must specifically find that Todman aided and abetted another person as an element of the crime charged in order to convict him. Because the evidence was insufficient for a reasonable jury to find that Todman aided and abetted anyone in the unauthorized possession of a firearm, his conviction is **REVERSED**.

HODGE, *Chief Justice*, concurring. I fully agree with and join the majority opinion, both with respect to the ultimate result and its reasoning. I write separately, however, for the very limited purpose of highlighting the problems caused by the People's seemingly irrational method of charging aiding and abetting.

As this Court has observed in numerous cases,[1] and as the majority opinion succinctly explains, while title 14, section 11 of the Virgin Islands Code subjects an aider and abettor to the same *punishment* as a principal actor, the *elements* the People must prove beyond a reasonable doubt to convict a defendant of aiding and abetting are very different than those necessary to obtain a conviction under a primary actor theory. To establish liability for unauthorized possession of a firearm under a primary actor theory, the People simply need to prove that the defendant possessed a firearm and lacked a license or was otherwise not permitted to possess a firearm. *See, e.g., Phillip v. People*, 58 V.I. 569 (2013). However, to establish liability for the same offense under an aiding and abetting theory, the People must prove that someone else possessed a firearm without a license or other authorization, and that the defendant knowingly sought to facilitate that individual's unauthorized possession. *See People v. Clarke*, 55 V.I. 473, 479 (V.I. 2011) (collecting cases).

"A criminal trial is a search for the truth; it is not a game of chess." *State v. Oster*, 922 A.2d 151, 163 (R.I. 2007). It is for this reason that the United States Constitution establishes various protections to safeguard the rights of criminal defendants, including the Sixth Amendment right to timely notice of the charges so that the defendant and his attorney may prepare an adequate defense. *Ambrose v. People*, 56 V.I. 99, 103 (V.I. 2012). These protections also seek to minimize, to the extent possible, the "wide disparity between the ability of the prosecution with unlimited funds" and "an entire police force" and the resources available to a criminal defendant. *People v. Linder*, 5 Cal. 3d 342, 96 Cal. Rptr. 26, 486 P.2d 1226, 1229 (1971) (internal quotation marks omitted).

The tactics employed the People in this case — and other cases as well[2] — have gone beyond impermissibly turning the underlying criminal prosecution into a game of chess; a more apt analogy is that the People invited Todman to play a game of chess, and on the day of trial arrived with a golf ball, a club, and a tee, without providing any notice that the

---

[1] *See, e.g., Fontaine v. People*, 56 V.I. 571, 578 (V.I. 2012); *People v. Clarke*, 55 V.I. 473, 479 (V.I. 2011); *Brown v. People*, 54 V.I. 496, 505 (V.I. 2010).

[2] For instance, in one recent case, this Court criticized the People's practice of stating in an information that a criminal defendant was "aided and abetted by another," a phrase which was so confusing that even this Court could not ascertain whether the People had charged the defendant as a primary actor or an aider and abettor, resulting in this Court analyzing the sufficiency of the evidence under both theories. *See Fontaine*, 56 V.I. at 578-79, 581, 584-86.

game might change. This is not a case where the People did not know which of two co-defendants served as the primary actor, or where a prosecution witness unexpectedly changed his story for the first time at trial to identify a defendant previously thought to be an aider and abettor as the primary actor. Nor is it a case where the defendant, seeking to defeat an aiding and abetting charge, sought a windfall by actively introducing evidence of his own guilt as a primary actor. Rather, this is a case where the People represented to both defense counsel and the Superior Court that Todman was guilty solely as an aider and abettor, but then proceeded to coherently present their case under a primary actor theory, including actively introducing evidence that Todman did not possess a firearms license — a fact wholly irrelevant to his liability as an aider and abettor — while not even attempting to prove that Smith, the possessor and alleged "other person," lacked authorization to possess a firearm.

Simply put, this sort of conduct has no place in the American criminal justice system. When, as here, the People file an information that explicitly and unambiguously charges a defendant solely under an aider and abettor theory, and subsequently make no attempt to amend the information prior to trial, defense counsel should be able to take the People at its word, and prepare a defense accordingly. While Virgin Islands law places criminal defendants on notice that they must always expect to defend against the charge of aiding and abetting when charged as a primary actor, the same is not true when a defendant is charged solely as an aider and abettor.[3] For this reason, as well as the reasons set forth in the majority opinion, I reverse Todman's conviction.

---

[3] Importantly, I note that section 11 of title 14 of the Virgin Islands Code only provides that "[p]ersons within this section shall be prosecuted and tried as principals, and no fact need be alleged in the information against them other than is required in the information against the principal," 14 V.I.C. § 11(c), but does not state that the opposite is true. Thus, while the Legislature has provided criminal defendants charged solely as primary actors in an information with constructive notice that the government may convict them on an aider and abettor theory at trial, it has not similarly authorized the government to convict criminal defendants charged solely as aider and abettors on a primary actor theory.