**JAMAL JUSTIN FAHIE, Appellant/Defendant**

**v.**

**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Criminal No. 2013-0042

Supreme Court of the Virgin Islands

May 18, 2015

DAVID J. CATTIE, ESQ., The Cattie Law Firm, P.C., St. Thomas, USVI, *Attorney for Appellant.*

JENNIFER L. AUGSPURGER, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorney for Appellee*.

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

(May 18, 2015)

SWAN, *Associate Justice*. Jamal J. Fahie was convicted of first and second-degree murder, three counts of possession of an unlicensed firearm, and one count of first degree assault. Fahie asserts that the evidence was insufficient to convict him, that the trial court erred in denying his motion for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure, that the trial court erred in giving improper jury instructions, and that the trial court erred in admitting prejudicial photographic evidence. Because we find that no reversible error was committed during trial and that the evidence was sufficient to convict Fahie on all charges, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

On November 19, 2011, at approximately 5:30 p.m. Omari Baltimore was shot 19 times while walking up Bunker Hill in the vicinity of Garden Street on St. Thomas. Simultaneously, Carol Kelly was walking up Bunker Hill when she witnessed the murder and shooting of Baltimore. She immediately called 911 to report the shooting. Subsequently, Kelly identified Kamaal Francis as the shooter from a police photo array.

The police arrested Francis the following day and charged him with first-degree murder and several other crimes. Francis initially denied any involvement in the shooting and claimed that he was gambling at a location miles away from Bunker Hill at the time of Baltimore's murder. However, Francis later recanted this statement and informed the police that he was at the scene of the shooting but that it was Jamal Fahie who shot Baltimore. Francis further stated that Fahie was perturbed at seeing Baltimore, who is from the Savan area of the island, in the Garden Street area because there existed gang-related animosity between the residents of the two areas. Additionally, Francis claimed that he was not initially truthful with his version of events surrounding Baltimore's murder because he feared that his life would be in jeopardy if he was labeled a "snitch."

Francis gave a detailed description of how Fahie committed Baltimore's murder as well as a description of what clothing Fahie was wearing at the time of the murder, including long black pants, a white shirt, a blue and black New York Yankees cap, and a ski mask. Police authorities later found these items secreted in Fahie's residence. The trial record reflects that gunshot residue particles were found on the clothing retrieved from a bedroom inside Fahie's residence. Francis also testified that a Glock firearm was used in the commission of Baltimore's murder, which was corroborated by the People's expert witness.

The defense called Fahie's cousin, Shakir Davis, as an alibi witness. Davis testified that Fahie was with him at his home when the murder occurred. However, Davis did not immediately tell anyone of Fahie's whereabouts around the time of Baltimore's murder or after Fahie's arrest. It was eleven months after the murder when Davis first told Fahie's attorney of Fahie's whereabouts on the night of Baltimore's murder.

Francis was arrested and charged with several crimes, including aiding and abetting in the first-degree murder of Baltimore. Francis consummated a plea agreement with the People, pursuant to which he was allowed to plead guilty to the crime of being an accessory after the fact in exchange for his testimony against Fahie. Fahie was charged in a fifth amended information and was subsequently convicted of first and second-degree murder, three counts of unauthorized use of a firearm, and assault in the first degree. This appeal ensued.

## II. JURISDICTION

Title 4, section 32(a) of the Virgin Islands Code provides, in pertinent part, that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." The Superior Court's judgment and commitment in this case, entered on May 10, 2013, was a final judgment, and Fahie timely filed a notice of appeal. *Francis v. People*, 59 V.I. 1075, 1078 (V.I. 2013). Accordingly, we have jurisdiction over this appeal. *Potter v. People*, 56 V.I. 779, 787 (V.I. 2012).

## III. ISSUES AND STANDARD OF REVIEW

On appeal, Fahie propounds the following issues for consideration: A) whether the evidence was insufficient to convict him, B) whether the trial court abused its discretion in its final jury instructions on aiding and

abetting, C) whether the trial court abused its discretion in giving a jury instruction regarding the People's duty to procure scientific evidence and its duty to employ special investigative techniques, D) whether the trial court abused its discretion in failing to give the requested cautionary jury instruction regarding accomplice liability, and E) whether the trial court abused its discretion in admitting autopsy photographs of the deceased into evidence.

Our standard of review in examining the Superior Court's application of law is plenary, while findings of fact are reviewed only for clear error. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007). We review a trial court's decision to admit evidence for abuse of discretion. *Morton v. People*, 59 V.I. 660, 665 (V.I. 2013); *Francis*, 56 V.I. at 370, 379 (V.I. 2012); *George v. People*, 59 V.I. 368, 386 (V.I. 2013).

In our review of a claim of insufficiency of the evidence we apply a "particularly deferential standard of review." *James v. People*, 60 V.I. 311, 317 (V.I. 2013); *Castor v. People*, 57 V.I. 482, 488 (V.I. 2012). An appellant has a very heavy burden in advancing an insufficiency of the evidence claim. *Latalladi v. People*, 51 V.I. 137, 145 (V.I. 2009). We must affirm a jury's verdict as long as substantial evidence was presented at trial to allow a rational trier of fact to convict when the evidence is viewed in a light most favorable to the government. *Webster v. People*, 60 V.I. 666, 678-79 (V.I. 2014); *Cascen v. People*, 60 V.I. 392, 401 (V.I. 2014); *Stevens v. People*, 52 V.I. 294, 304 (V.I. 2009). Secondarily, a finding of insufficiency of the evidence should be confined to those cases in which the prosecution's failure to establish the elements of the crime is clear. *James*, 60 V.I. at 318; *Todmann v. People*, 59 V.I. 926, 934 (V.I. 2012).

Generally, we review the wording of an instruction for abuse of discretion. *Ostalaza v. People*, 58 V.I. 531, 556 (V.I. 2013); *Jackson-Flavius v. People*, 57 V.I. 716, 721 (V.I. 2012). However, "in the absence of an objection to a jury instruction, we review for plain error." *Jackson-Flavius*, 57 V.I. at 721.

Lastly, we review *de novo* a trial court's denial of a motion for judgment of acquittal. *Ramirez v. People*, 56 V.I. 409, 417 (V.I. 2012); *Stevens v. People*, 52 V.I. 294, 304 (V.I. 2009).

## IV. DISCUSSION

### A. The trial court did not err in failing to grant Appellant's motion for judgment of acquittal or for failing to grant a new trial.

#### 1. The evidence was sufficient to convict Appellant of all counts of the fifth amended information

"[M]oving for a judgment of acquittal once — whether it is after the People rests, after the close of evidence, or after the jury returns a verdict — is sufficient to fairly present the issue to the Superior Court" and preserve the issue for appeal. *Percival v. People of the V.I.*, 62 V.I. 477, 486 (V.I. 2015). In reviewing Fahie's motion for judgment of acquittal, we will "view the evidence in the light most favorable to the People, and affirm the conviction if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Webster*, 60 V.I. at 678-79 (quoting *Cascen*, 60 V.I. at 401); *Fontaine*, 56 V.I. at 667. In this case, a rational juror could find that there was sufficient evidence to support the essential elements of the crimes charged in the fifth amended information.

■ Fahie was found guilty of first and second degree murder, three counts of unauthorized use of a firearm, and assault in the first degree with intent to commit murder. Under 14 V.I.C. § 922(a)(1), first degree murder is defined as all murder which is perpetrated by means of poison, lying in wait, torture, detonation of a bomb or by any other kind of willful, deliberate, and premeditated killing. Second degree murder is defined under 14 V.I.C. §§ 921 and 922(b) as all other kinds of murder other than first degree murder. In viewing the evidence in a light most favorable to the People, there was sufficient evidence introduced during trial to find and convict on the elements of first and second degree murder.

Francis, Fahie's friend, testified that he saw Fahie shoot Baltimore approximately 20 times. Dr. Francisco J. Landron, a forensic pathologist and medical examiner, testified that Baltimore's body, which he examined, had 19 gunshot wounds. Francis further testified that the motive for the murder was a feud between Fahie and Baltimore's older brother, Kofi Baltimore, which was prompted by a past incident in which Kofi was the driver of a vehicle that was involved in an unsuccessful drive-by shooting directed at Fahie. Pursuant to a search warrant, police

631

searched Fahie's home where they recovered a baseball cap, a mask, a white t-shirt and black jeans from Fahie's bedroom. Subsequently, all of these items tested positive for gunshot residue. These items also substantiate Francis's testimony as to how Fahie was attired at the scene of the shooting and his testimony that he saw Fahie shoot Baltimore. Therefore, the People presented sufficient evidence to convict Fahie.

Section 2253(a) of title 14 of the Virgin Islands Code, prohibits anyone, unless otherwise authorized by law, from possessing, bearing, transporting, or carrying any firearm. Again, Fahie argues on appeal that the People failed to prove the elements of the crime based on the theory that Francis murdered Baltimore. However, the People presented sufficient evidence to allow a jury to reasonably conclude that Fahie unlawfully possessed a firearm on November 19, 2011, and that he discharged or aided and abetted in the discharge of a firearm. As stated above, Francis and Caroline Kelly testified to seeing and hearing approximately 20 gunshots being fired. Furthermore, the People introduced into evidence a document titled "certificate of absence" from the police department as proof that Fahie was never licensed to own or possess a firearm in the Virgin Islands.

Lastly Fahie was charged with assault in the first degree in violation of 14 V.I.C. §§ 295(1) and 11(a). To convict Fahie of first degree assault, the People were required to prove, beyond a reasonable doubt, that Fahie assaulted another with the intent to commit murder. Here, evidence was presented that Fahie pointed a gun at the victim and shot him approximately 20 times. Therefore, there was sufficient evidence to prove the elements of all the crimes for which Fahie was convicted.

## 2. Appellant's Superior Court Rule 135 motion.

Fahie argues that as an alternative to his Motion for Judgment of Acquittal, the court erred by denying his motion for a new trial pursuant to Superior Court Rule 135. This Court reviews the denial of a motion for a new trial pursuant to Rule 135 for abuse of discretion. *Stevens v. People*, 52 V.I. 294, 304 (V.I. 2009).

Superior Court Rule 135 provides that a trial court may grant a new trial "in the interest of justice." SUPER. CT. R. 135. Therefore, the court may weigh the evidence and the credibility of witnesses, and if the court determines that there has been a miscarriage of justice, the court may order a new trial. *Morton*, 57 V.I. at 77.

■ Fahie asserts that the trial court should have granted him a new trial because the evidence implicates Kamal Francis as the shooter. He contends that Carol Kelly's identification of Francis as the shooter and evidence that a single firearm was involved in the shooting proves that there was insufficient evidence for his conviction. Nevertheless, even if the jury discounts Francis's testimony, there is still sufficient evidence to convict Fahie on all charges in the amended information.

First, Carol Kelly testified to seeing two men on the day of the shooting in which one man pointed to the victim immediately before the second gunman began shooting. This fact proves that a deliberate act occurred that would indicate an intent to kill the victim. Furthermore, witness Karl Webbe testified that he gave both Fahie and Francis a ride to the Bunker Hill location where the shooting occurred and also gave them another ride to a different location five minutes after the shooting. This testimony combined with the items found in Fahie's home produced sufficient circumstantial evidence from which a jury could still convict Fahie on all charges. Therefore, the Superior Court did not abuse its discretion in denying Fahie's motion for a new trial.

## B. The trial court did not err in instructing the jury on aiding and abetting.

Fahie argues that the trial court erred in instructing the jury on the elements of aiding and abetting when the People's theory at trial was that Fahie acted alone in shooting and murdering Baltimore. The People charged that "Fahie aiding and abetting another," had committed all the offenses listed in the fifth amended information. In its final jury instruction the trial court stated that a defendant "may be found guilty of an offense even if he did not personally do every act constituting the offense charged if he aided or abetted the commission of the offense." The trial court then proceeded to instruct the jury on the elements needed in order to find Fahie guilty of aiding and abetting.

■ Generally, "a person charged as a primary actor can be convicted as an aider and abettor." *Hughes v. People*, 59 V.I. 1015, 1019 (V.I. 2013). Also, at the close of the prosecution's case Fahie was charged as a principal in the fourth amended information, to which Fahie did not object. Then, after one of Fahie's witnesses raised the possibility of two shooters, the prosecution amended the information again to include the charge of aiding and abetting. This fifth amended information was

unnecessary because Fahie was already on notice he could be found guilty as an aider and abettor since he was charged as a primary actor. *Todman v. People*, 59 V.I. 675, 683 (V.I. 2013) ("[A] defendant can be charged as a principal and convicted as an aider and abettor.").

In *Todman*, we reversed a conviction based on an error in the People's charging of aiding and abetting, in an inartfully drafted information, and the final jury instruction given by the trial court. It is important to distinguish *Todman* from this case. We reversed the conviction in *Todman* because although the People presented their case to the jury as if Todman was the sole actor, the People charged Todman *only* as an aider and abettor, and the trial court specifically instructed the jurors that they must find that Todman aided and abetted someone in order to convict him. *Id.* at 682-83. While we are concerned if the People charge criminal defendants with aiding and abetting and yet prosecute them as primary actors, this case is distinguishable from *Todman*.[1] Unlike the proceedings in *Todman*, where the trial court specifically instructed that the jury must find that the offenses were committed by another, and the defendant aided and abetted that person, *id.* at 685, the trial court here instructed the jury that Fahie "*may* be found guilty of an offense even if he did not personally do every act constituting the offense." Here, the trial court did not instruct that the jury *must* find aiding and abetting as an element of the crime; therefore, it would have been obvious to the jury that Fahie could be convicted as a primary actor, which was the People's theory during trial.

■■ Additionally, the trial court did not abuse its discretion in giving an aiding and abetting instruction, even though the defense requested that it be omitted from the final jury instructions. First, the defense had ample notice concerning the People's theories of guilt based on aiding and abetting. *See Lott v. Trammell*, 705 F.3d 1167, 1189 (10th Cir. 2013). Here, it is not relevant that the People's theory at trial was that Fahie was the primary actor. What is crucial is that the crux of the defense theory was that Francis, and not Fahie, murdered Baltimore. Where the defense contends that someone other than the defendant committed the charged offense, the "government [is] entitled to respond to this defense by contending that it failed even on its own terms through an aiding-and-

---

[1] Even if the People had charged Fahie solely as an aider and abettor, we note again that "the variance between the charges in [an i]nformation and the offer of proof at trial would not ordinarily warrant a reversal." *Todman*, 59 V.I. at 684.

abetting theory of liability." *Rashad v. Lafler*, 675 F.3d 564, 570 (6th Cir. 2012); *Trammell*, 705 F.3d at 1189 (the trial court's final jury instruction on aiding and abetting was substantially supported by the evidence presented by the defense which attempted to suggest that someone other than the defendant murdered the victim); *Brassfield v. State*, 905 So. 2d 754, 758 (Miss. Ct. App. 2004) (although not a part of the official indictment, jury instruction on aiding and abetting was not error where evidence supported such an instruction). Accordingly, although at trial the People failed to present an aiding and abetting theory, the defense contended that it was Francis who murdered Baltimore. Therefore, the People were entitled to an aiding and abetting instruction to rebut this defense theory.

## C. The trial court's instruction on lack of DNA and fingerprint testing was in error; however, the error was harmless.

Fahie also argues that the Superior Court erred when it instructed the jury that the People was not required to produce any specific type of evidence, such as fingerprint or DNA evidence, in order to prove its case beyond a reasonable doubt.[2] Fahie contends that these instructions were impermissible because the comments gave greater weight to specific evidence in the case. We agree.

During trial, Fahie emphasized the People's lack of fingerprint or DNA evidence that would connect him to the shooting. Based on this defense, the Superior Court included an instruction, over Fahie's objection, because "the thrust of the defense case . . . [was] an absence of fingerprints or DNA evidence" and because the instruction was "an

---

[2] The entirety of the contested instruction reads:

Although the People are required to prove the Defendant's guilt beyond a reasonable doubt, the People are not required to present all possible evidence related to the case or to produce all possible witnesses who might have some knowledge about the facts of the case. Similarly, there is no legal requirement that the People employ any specific investigation technique or all possible investigative techniques to prove this case. During the trial you heard testimony that the police did not use certain investigation techniques such as fingerprint analysis or DNA analysis in this case. Because you should examine all of the evidence as well as any lack of evidence in arriving at your verdict, you may consider a failure to employ certain investigative techniques in deciding whether the People have met the burden of proving the Defendant's guilt beyond a reasonable doubt. But, the People are not required to gather or produce any specific type of evidence so long as they present sufficient evidence to convince you beyond a reasonable doubt of the Defendant's guilt.

accurate statement of the law". In relying on Fahie's February 2, 2013 post-trial motion, the Superior Court held that the instruction was proper noting that it was a modified version of Model Jury Instruction 4.14 from the Model Criminal Jury Instructions for the United States Court of Appeals for the Third Circuit, and citing to *United States v. Saldarriaga*, 204 F.3d 50, 53 (2d Cir. 2000), where the Second Circuit approved of a similar instruction.

■ The Superior Court's specific instruction in this case stated that during trial, "testimony [was heard] that the police did not use certain investigative techniques such as fingerprint analysis or DNA analysis", and then reminded the jury that "there is no legal requirement that the People employ any specific investigation technique or all possible investigative techniques to prove this case." This was error. Although we have not previously addressed the validity of an instruction informing the jury that the People was not required to produce specific scientific evidence, this Court has noted that when the trial court comments on the evidence, or the absence of evidence, it risks invading the exclusive province of the jury "to decide what conclusions should be drawn from evidence admitted at trial." *Alexander v. People*, 60 V.I. 486, 498 (V.I. 2014) (quoting *Cavazos v. Smith*, 132 S. Ct. 2, 4, 181 L. Ed. 2d 311 (2011)); *Corriette v. Morales*, 50 V.I. 202, 214 (V.I. 2008); *see also Austin v. State*, 784 So. 2d 186, 197 (Miss. 2001) ("Matters regarding the weight and credibility of evidence must be resolved by the jury."). "Especially in a criminal prosecution, the trial court should take great care not to intimate to the jury the court's opinion as to the weight, character, or credibility of any evidence adduced," *Whitfield v. State*, 452 So. 2d 548, 549 (Fla. 1984) (a trial court "should scrupulously avoid commenting on the evidence in a case"); *Krimer v. State*, 699 N.E.2d 659, 664 (Ind. 1998) (noting the "well established principle that jury instructions should not single out" specific evidence or comment upon the weight or consideration to be given to specific evidence).

■ This type of instruction — indicating that the prosecution is not required to introduce certain scientific evidence — are often called "anti-CSI effect" instructions. Anti CSI effect instructions emerged "in response to the increased popularity of forensic crime television shows" and "complaints that these shows were heightening juror expectations that forensic evidence, like DNA, would be admitted in criminal trials." *Robinson v. State*, 436 Md. 560, 84 A.3d 69, 75 (2014). However, despite

the attention such instructions have received in recent years, "empirical proof of the existence of a 'CSI effect' is still wanting." *Id.* at 79; *Commonwealth v. Seng*, 456 Mass. 490, 924 N.E.2d 285, 297 (2010) ("[T]he 'CSI effect' may be largely speculative.") (citing Tom R.Tyler, *Viewing CSI and the Threshold of Guild: Managing Truth and Justice in Reality and Fiction*, 115 YALE L.J. 1050, 1053 (2006); *see also* Kimberlianne Podlas, *The Verdict on Television: How Does Television Inform Our Understanding of the Legal System?*, 12 INSIGHTS ON L. & SOC'Y 16, 19 (2011) (describing the CSI effect as "more myth than reality" and noting that scholars "have been unable to find any empirical support for an anti-prosecution 'CSI effect' on verdicts"). In light of the lack of empirical evidence suggesting that the CSI effect actually exists, courts addressing the use of such instructions have largely limited the use of anti-CSI effect instructions to instances where the defense "materially misstate[s]" the People's obligation to introduce specific types of scientific evidence. *See Robinson*, 84 A.2d at 74 (declining to approve of an "anti-CSI effect" instruction absent "empirical proof that a 'CSI effect' exists" and holding that such an instruction should "only [be] triggered when a material misstatement of the law occurs"); *see also Wheeler v. United States*, 930 A.2d 232, 239 (D.C. 2007) (where the defense does not misstate the People's burden, an anti-CSI effect instruction "runs the risk of confusing the jury by seeming to contradict the admonition in the reasonable doubt instruction . . . that reasonable doubt may be based on" a lack of evidence).

 In this case, Fahie acknowledges that the lack of fingerprint or DNA evidence connecting him to the shooting was "the thrust" of his defense, but notes that there is nothing in the record to suggest that he misstated the law regarding the People's burden of proof or otherwise suggested that the People was legally required to introduce such evidence. And merely, "point[ing] out what procedures might have been available to the [People]" does not constitute a material misstatement of the People's burden to prove its case beyond a reasonable doubt. *Robinson*, 84 A.3d at 81 ("Certainly, lack of evidence is a common defense in a criminal case to generate reasonable doubt."). Moreover, as pointed out by Fahie on appeal, the People were free to argue that the evidence, even without fingerprint or DNA analysis, was sufficient to meet their burden. Accordingly, because the defense in this case never misstated the People's burden to introduce any specific type of evidence, and only pointed out

that there was a lack of fingerprint or DNA evidence connecting Fahie to the crime, it was error for the Superior Court to provide this instruction.

Although we conclude that the Superior Court erred in giving the anti-CSI effect instruction in this case, we nonetheless consider "whether, in the context of this particular case, the error is merely harmless." *Frett v. People*, 58 V.I. 492, 506 (V.I. 2013); *see* V.I.S.Ct.R. 4(i). In applying harmless error review, we must determine whether the error affected the defendant's substantial rights, and if there is no such effect, the error will not constitute grounds for reversal. *Browne v. People*, 56 V.I. 207, 236 (V.I. 2012). For non-constitutional errors, "we will affirm when it is highly probable that the error did not contribute to the judgment." *Connor v. People*, 59 V.I. 286, 299 (V.I. 2013). In this case, we cannot find that the erroneously given jury instruction contributed to Fahie's conviction, especially in light of the court's additional instructions to the jury. Indeed, the jury was properly instructed that they were the sole judges of the evidence, that it was their duty to weigh the evidence, and that the People had the burden of proving Fahie's guilt beyond a reasonable doubt. Moreover, we cannot overlook the fact that the court indicated several times that the jury "should examine all of the evidence as well as any lack of evidence in arriving" at its verdict, and that it could "consider a failure to employ certain investigative techniques in deciding whether the People have met the burden of proving the defendant's guilt beyond a reasonable doubt." Considering the entire trial record, we cannot conclude that the Superior Court's error in instructing the jury on the absence of specific scientific evidence contributed to Fahie's conviction, requiring reversal.

## D. The trial court's failure to give the requested cautionary instruction regarding accomplice liability verbatim was not reversible error.

Fahie next argues that the trial court erred in its refusal to give the defense's requested accomplice liability instruction verbatim. Fahie requested the following instruction:

> You have heard evidence that KAMAL FRANCIS received a benefit from the government in exchange for testifying, namely that the government dismissed the murder charge against him in exchange for his testimony. His testimony was received in evidence and may be con-

sidered by you. The government is permitted to present the testimony of someone who has reached a plea bargain with the government in exchange for his testimony, but you should consider the testimony of KAMAL FRANCIS with great care and caution. In evaluating KAMAL FRANCIS's testimony, you should consider this factor along with the others I have called to your attention. Whether or not his testimony may have been influenced by the plea agreement the government's promise and his alleged involvement in the crime charged is for you to determine. You may give his testimony such weight as you think it deserves.

(J.A. at 73.) The trial court rejected this proposed instruction and instead gave the following instruction:

You heard the testimony of a witness who has pled guilty to criminal charges as a result of this incident. That witness' testimony is to be evaluated by you in the same manner as that of any other witness, and it is for you to determine how much weight to give to it. However, because the witness is awaiting sentencing in connection with these events, you must examine his testimony with caution and also consider whether and to what extent that fact influenced the testimony of the witness.

Fahie asserts that this modified instruction constitutes reversible error. Fahie did not object to this jury instruction at trial and so we review it only for plain error. *See Francis v. People*, 52 V.I. 381, 390 (V.I. 2009); V.I.S.Ct.R. 4(h). Under this standard "there must be (1) 'error', (2) that is 'plain', and (3) that 'affects substantial rights.' " *Simmonds v. People*, 59 V.I. 480, 486 (V.I. 2013). In order for this Court to reverse, the error must also "seriously affect the fairness, integrity, or public reputation of the judicial proceedings." *Id.*

 We have substantially addressed this same issue in *Frett v. People*, 58 V.I. 492 (V.I. 2013). Similar to the circumstances in this case, the trial court in *Frett* gave an accomplice liability instruction that was modified from the specific form requested by the defense. Over the defense's objection, the trial court in *Frett* did not advise the jury that they should consider the testimony of the accomplice who had received a plea deal from the people "with great care and caution." *Id.* at 513. In *Frett*, we adopted the approach that "it is the better practice to give the instruction whenever the witnesses have strong incentives to fabricate or mold their

testimony as the government desires in order to escape prosecution, lighten their sentences, obtain remuneration or receive protection" unless there is a compelling reason to omit the instruction. *Id.* at 514-15 (citation and internal quotation marks omitted). However, we did note that certain circumstances reduce the need for the instruction. We found in *Frett*, for example, that the defendant was given wide latitude to challenge the credibility of the accomplice and to emphasize the accomplice's plea agreement with the People. *Id.* at 514. We find the same factors to be present in this case, and that under the standard established in *Frett*, the trial court's failure to give the accomplice liability instruction as requested was not plain error.

First, although the trial court did not emphasize that Francis's testimony should be given 'great care and caution' in those exact words, the trial court did inform the jury that they should "examine his testimony with caution." Further, the jury was aware of Francis's agreement with the People. As was the case in *Frett*, the defense had ample opportunity to challenge Francis's credibility at trial. The plea agreement between Francis and the People was also admitted into evidence and was available to the jurors during deliberations for their review and examination of the terms of the agreement. Additionally, during closing arguments, the defense referenced the number of times that Francis has knowingly prevaricated concerning the alleged factual circumstances surrounding Baltimore's murder and further emphasized that Francis's plea agreement was further incentive for him to be mendacious.

Accordingly, the trial court's refusal to impart an instruction including the "great care and caution" language was not plain error. *See, e.g., Ostalaza*, 58 V.I. at 561 (finding no ground to reverse defendant's conviction based on jury instruction given by the trial court, where the court's instruction "covered the substance of the [defendant's] requested instruction").

### E. The admission into evidence of the photos depicting Baltimore's bullet-ridden corpse were not unfairly prejudicial.

Fahie asserts that he was unduly prejudiced by the admission of exhibits 3A through 3C, which are photographs of the victim's injuries. Federal Rule of Evidence 403 provides that the court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the

issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403; *Alexander v. People*, 60 V.I. 486, 496 (V.I. 2014). "[U]nfair prejudice within the context of Rule 403 means 'an undue tendency to suggest decision on an improper basis, commonly, though, not necessarily, and emotional one.' " *Id.* at 496 (quoting FED. R. EVID. 403, advisory committee's note). "A trial court has wide discretion in determining whether to exclude otherwise admissible evidence under Rule 403 of the Federal Rules of Evidence, and we may not disturb the trial court's determination unless we find that the court acted arbitrarily or irrationally." *Alexander v. People*, 60 V.I. 486, 494 (V.I. 2014) (citing *Francis*, 56 V.I. at 386). *See also Morton v. People*, 59 V.I. at 665-69. "[J]udicial restraint is . . . desirable" when reviewing a trial court's ruling under Rule 403. *Powell v. People*, 59 V.I. 444, 464 (V.I. 2013) (quoting *Francis*, 56 V.I. at 385-86).

 While this Court finds that the use of particular photographs in this case was, to some extent, prejudicial to the defendant, it is implicit that all evidence carries with it some prejudicial effect; the required balance of prejudice under Rule 403, however, also takes cognizance of the amount of probative value the trial court can identify in these items. *See, e.g., Carty v. People*, 56 V.I. 345, 359 (V.I. 2012) (in-life photograph of victim deemed irrelevant and thus prejudicial, where it "only served to appeal to the sympathy of the jurors"). Fahie argues that based on testimony as to the identity of the victim, as well as the time, place, and manner of death of the victim, the relevance of crime scene photos were minimal. However, this Court has held that "it cannot be presumed that the probative value was substantially outweighed by the danger of unfair prejudice or presentation of cumulative evidence, nor was the trial court required to exclude the evidence on the basis that there was other testimony or methods of proving the facts." *Powell*, 59 V.I. at 465 (V.I. 2013) (citing *United States v. Whitfield*, 715 F.2d 145, 147-48 (4th Cir. 1983)).

 Dr. Landron testified that he found nineteen gunshot wounds on Baltimore's body, including two sets of clusters of bullets: one of seven bullets, and the other of six bullets. In addition, eyewitness, Carol Kelly, testified that because of the large number of shots she heard being discharged she believed that two guns were used in the homicide and that the cause of death was multiple gunshot wounds. Therefore, a photograph of multiple gunshot wounds to Baltimore's body corroborates the

testimony and helps to assist the jury in understanding the extent of the victim's injury. Under these circumstances, the photographs were sufficiently probative of issues in the case, and the probative value of the photographs was not substantially outweighed by their prejudicial effect. *See Powell*, 59 V.I. at 464-66; *Francis*, 56 V.I. at 384-86. Thus, it cannot be said that the Superior Court abused its discretion in admitting these photographs.

## V. CONCLUSION

For the reasons elucidated above, we affirm Fahie's convictions.