PRECEDENTIAL
UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2721
_____

JAMAL JUSTIN FAHIE,
                                        Petitioner

v.

PEOPLE OF THE VIRGIN ISLANDS
_____

On Writ of Certiorari to the Supreme Court
of the Virgin Islands
Supreme Court Crim. No. 2013-0042
_____

Argued
December 12, 2016

Before: CHAGARES, JORDAN and HARDIMAN, *Circuit*
*Judges*

(Filed May 24, 2017)
_____

David J. Cattie   [ARGUED]
2329 Commandant Gade – Unit #3
St. Thomas, VI   00802
      *Counsel for Petitioner*

Kimberly L. Salisbury
Pamela R. Tepper
Su-Layne U. Walker   [ARGUED]
Office of Attorney General of
      Virgin Islands
Department of Justice
34-38 Kronprindesens Gade
GERS Complex – 2nd Fl.
St. Thomas, VI   00802
      *Counsel for Respondent*

Edward L. Barry   [ARGUED]
2120 Company Street
Christiansted, VI   00820

Christopher A. Brookhart
Estrella
150 Tetuan Street
San Juan, PR  00901
      *Counsel for Amicus Curiae*

_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

This case comes to us on a writ of certiorari to the Virgin Islands Supreme Court. Kamaal Francis was identified by an eyewitness as the triggerman in the fatal shooting of Omari Baltimore on St. Thomas. Francis protested his innocence but admitted that he was present during the shooting and claimed that Jamal Justin Fahie wielded the weapon. Both Fahie and Francis were later charged with the murder and related crimes. Francis worked out a plea deal with the government. In exchange for reduced charges, he agreed to testify against Fahie, which he did, swearing that Fahie was the sole shooter. The jury found Fahie guilty as charged. After an unsuccessful appeal to the V.I. Supreme Court, Fahie petitioned us for a writ of certiorari.

We granted the petition and accepted the following two questions: (1) whether the V.I. Supreme Court erred in ruling that it was appropriate for the trial court to give an "aiding and abetting" instruction under the circumstances of this case; and (2) whether the V.I. Supreme Court used the correct standard to assess whether another supposed error in the jury instructions was harmless. In addition to the briefing provided by the parties, the Virgin Islands Bar Association has filed an amicus brief challenging our jurisdiction to consider this matter at all. For the reasons that follow, we conclude that we do have jurisdiction, that the ruling on the "aiding and abetting" instruction was proper, and that we improvidently granted certiorari on the harmless error question.

3

## I.  Background

### A.  *Factual Background*

"On November 19, 2011 … Omari Baltimore was shot 19 times while walking up Bunker Hill … on St. Thomas." *Fahie v. People*, 62 V.I. 625, 628 (2015).  Carol Kelly, a resident of a nearby neighborhood, witnessed the murder.  *Id*.  She called 911 to report the crime and, later that day, identified Kamaal Francis as the killer from a police photo array.  *Id.*  "The police arrested Francis the following day and charged him with first-degree murder and several other crimes."  *Id.*  At first, Francis lied about his location and his involvement in the murder.  *Id.*  "However, [he] later recanted … and informed the police that he was at the scene of the shooting but that it was Jamal Fahie who shot Baltimore."  *Id.*  Francis explained that Fahie was motivated by gang-related animosity.  *Id.*  He also "gave a detailed description of how Fahie committed Baltimore's murder as well as a description of what clothing Fahie was wearing at the time of the murder[.]"  *Id.* at 629.  Among other details, Francis noted that Fahie used a Glock firearm[1] to commit the crime.  *Id.*  A subsequent ballistics analysis confirmed that a Glock was the murder weapon.   "Police authorities later found [the clothing that Francis had described] secreted in Fahie's residence."  *Id.*  The clothes tested positive for gunpowder residue.  *Id.*

---

[1] "Glock" is the tradename of the Austrian firearm manufacturer Glock Ges.m.b.H.  *Glock Gesellschaft m.b.H.: Company Information*, D&B Hoovers (Apr. 19, 2017, 11:00 AM), http://www.hoovers.com/company-information/cs/company-profile.glock_gesellschaft_mbh.85a9bff64e0c59c3.html.

*B.      Procedural Background*

Based on Francis's statement, "the government filed a multi-count Information against ... Fahie and ... Francis[.]"[2] (Opening Br. at 3.)  Both men were charged with first degree murder, second degree murder, first degree assault, and three counts involving the unauthorized use of a firearm.[3]  Francis later agreed to plead guilty to the charges of accessory after the fact and misprision of a felony, to cooperate with the government, and to testify against Fahie at trial.  In exchange,

[2] An indictment is not required to level felony charges in the Virgin Islands.  "[T]he right of presentment by grand jury is merely a remedial right which is not among the fundamental rights which Congress in legislating for a territory not incorporated into the United States, such as the Virgin Islands, must secure to its inhabitants. ... [U]ntil Congress shall extend rights of this character to the inhabitants of [the] territory, the judicial system prevailing in such territory—not the system contemplated by the Constitution—is applicable and controlling." *Rivera v. Gov't of V.I.*, 375 F.2d 988, 991 (3d Cir. 1967) (internal quotations omitted).    Thus, "[defendants] may be prosecuted by information unless a local law requires [they] be prosecuted by grand jury." *Simmonds v. People*, 59 V.I. 480, 490 (2013) (quoting *Codrington v. People*, 57 V.I. 176, 196 (2012)).

[3] While "aiding and abetting" was not expressly charged as a separate count, the theory was included within the language of each of the charged counts.  The language was stricken in the Fourth Amended Information, but was subsequently added back into the Fifth Amended Information, as will be discussed in more detail hereafter.

5

the government agreed to drop the other charges against Francis and to recommend a sentence of five to ten years imprisonment for the accessory charge and three years' for the misprision charge.

Francis kept his end of the bargain. He testified at trial that he and Fahie were together on the evening of the shooting and that they saw Baltimore walking towards the top of Bunker Hill. Francis said that he and Fahie got a ride to the top of the hill from Karl Webbe, one of Francis's friends, and that, during the ride, Fahie said "I'm gonna deal with this guy … [I'm gonna] kill him." (JA at 415.) At the high point of the road, Fahie got out of the car and ran up a flight of stairs to reach Baltimore, with Francis following. Francis described what happened next:

> When we got to the top of the stairs Mr. Fahie then takes a black mask out of his pocket ... [and] took an extended [ammunition] clip out of his right back pocket. ... So, Mr. Fahie then puts his mask over his face and loads his clip, and he looks up, sees Baltimore and he sho[o]ts him. ... I was right behind him.

(JA at 417-18.) After the shooting, Francis said that they ran down the stairs and were driven away by Webbe.

At trial, in addition to presenting Francis's account of events and arguing that Fahie was the sole shooter, the government presented forensic experts who testified that Baltimore was shot nineteen times, that he died of his gunshot wounds, that each of the bullets was fired from the same gun,

6

and that the gun involved in the shooting was manufactured by Glock.

Following the government's presentation of its case, Fahie invoked Federal Rule of Criminal Procedure 29 and moved for a judgment of acquittal on all counts, arguing that the government failed to present sufficient evidence on any count. He emphasized that the government had not presented any evidence to support an aiding and abetting charge of liability. The government opposed the Rule 29 motion but agreed to strike the aiding and abetting theory from the Information. Fahie's motion was held under advisement and subsequently denied.

Relying on the testimony of Carol Kelly, Fahie mounted a defense which was, basically, that Francis committed the murder. Kelly testified that she was walking up Bunker Hill when Francis passed her from behind. She indicated that the shooting started about two minutes after Francis had passed her, and that she saw Francis fire at least some of the shots. Kelly further recounted that she called 911 after the shooting and identified Francis from a photo lineup.[4]

---

[4] While Kelly did not see a second shooter, much of her testimony suggests that two people were involved in the shooting:

> "Q: Was the person who was doing the shooting the same person who had passed you on the hill? A: Initially, no. He was the one who fired the last four shots." (JA at 732);

7

After Fahie presented his case, the government advanced the Fifth Amended Information, which reincorporated the aiding and abetting theory of liability. The amendment was evidently motivated by Kelly's testimony. Over Fahie's objection, the trial court allowed the amendment and instructed the jury on aiding and abetting as a theory of guilt. The court also gave an anti-CSI instruction. An "anti-CSI" instruction states, in essence, that the government is not required to "employ any specific investigation technique [such as fingerprint analysis or DNA testing] or all possible investigative techniques to prove [its] case." (JA at 127.)

---

"Q: Okay. And when you looked up from there tell the jury what you saw? A: The gentleman who had pass[ed] me on the road was approaching a second person who had his arm extended and pointing across the road. Mr. Francis took one more step and then turned. The gunshots were continuing and there was a slight pause, and then Mr. Francis had the gun and walked across the road and shot four times into the body. Q: Did you ever see more than one firearm? A: No." (JA at 740);

"Q: Okay. So you had heard shots, at this point in time [Francis] wasn't shooting, you saw an arm extended and heard shots; is that correct? A: Correct." (JA at 744);

"They stood over him and shot him four times." (911 Call of Carol Kelly at 4:18-4:28 (Lexar zipdrive, Aug. 2012)).

8

The name by which such instructions are known is a reference to the popular television series "CSI" and its spinoffs, which feature crime scene investigators using sophisticated forensic techniques to solve crimes. The anti-CSI instruction in this case told the jury that the government was "not required to gather or produce any specific type of evidence so long as [it] present[ed] sufficient evidence to convince [the members] beyond a reasonable doubt of [Fahie's] guilt." (JA at 895-96.) Fahie was found guilty on all counts.

On appeal to the V.I. Supreme Court, Fahie challenged the trial court's decision to, *inter alia*, include the aiding and abetting instruction and the anti-CSI instruction. *Fahie*, 62 V.I. at 629-30. Both challenges were rejected. With respect to the aiding and abetting instruction, the V.I. Supreme Court concluded that there was sufficient evidence to support a theory of aiding and abetting liability and that Fahie had been given adequate notice of the theory. *Id.* at 633-35. With respect to the anti-CSI instruction, it agreed that the trial court should not have included the instruction but concluded that the error was harmless. *Id.* at 638.

After the V.I. Supreme Court ruled against him, Fahie sought a writ of certiorari from us and we granted his petition, specifically as to the questions relating to the "aiding and abetting" and "anti-CSI" instructions. (JA at 1-2.)

## II.    Discussion

### A.    *Jurisdiction*

The V.I. Supreme Court had jurisdiction under 4 V.I.C. § 32(a). *Fahie*, 62 V.I. at 629. Neither party contests our jurisdiction, but, in the role of amicus, the Virgin Islands Bar Association does, and, in any event, we have an obligation to consider it *sua sponte*. *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) ("[A] court, including an appellate court, will raise lack of subject-matter jurisdiction on its own motion.").

Under the Revised Organic Act of 1984, we had, for a limited time, certiorari jurisdiction over "all final decisions of the highest court of the Virgin Islands from which a decision could be had."[5]  48 U.S.C. § 1613 (1984 version) (amending

---

[5] Under the 1984 Act, "a dual system of local and federal judicial review in the Virgin Islands" was implemented, *Parrott v. Gov't of V.I.*, 230 F.3d 615, 619 (3d Cir. 2000), in which "'the judicial power of the Virgin Islands' [vested] in a 'District Court of the Virgin Islands established by Congress, and in such appellate court and lower local courts as may have been or may hereafter be established by local law.'" *Pichardo v. V.I. Comm'r of Labor*, 613 F.3d 87, 93 (3d Cir. 2010) (quoting 48 U.S.C. § 1611(a)).
　　Within that system, the Superior Court of the Virgin Islands holds concurrent original jurisdiction with the District Court in all criminal actions. 4 V.I.C. § 76(b). When the V.I. Supreme Court was established in 2004, cases from the Superior Court became appealable directly to it, as "the

the Revised Organic Act of the Virgin Islands). That grant of jurisdiction, however, was designed to terminate when the V.I. Supreme Court "developed sufficient institutional traditions to justify direct review by the Supreme Court of the United States from all such final decisions." *Pichardo v. V.I. Comm'r of Labor*, 613 F.3d 87, 94 (3d Cir. 2010) (quoting 48 U.S.C. § 1613 (1984 version)).

On December 28, 2012, the President of the United States signed into law the bill that became the current version of 48 U.S.C. § 1613, which provides formal recognition of the V.I. Supreme Court's institutionally mature status and began the phasing out of our certiorari jurisdiction. 48 U.S.C. § 1613 (2012 version) (amending the Revised Organic Act of the Virgin Islands). Section 1613 revokes our certiorari jurisdiction over all cases "commenced on or after" December 28, 2012. 28 U.S.C. § 1260 note (2012) ("The amendments made by this Act [amending § 1613] apply to cases commenced on or after the date of the enactment of this Act.").

The dispute over our jurisdiction in this case centers on the meaning of the words "commenced on[.]" *Id.* The operative question is whether § 1613 revokes jurisdiction over cases commenced in the Superior Court on or after December 28, 2012, or whether the law only revokes

---

supreme judicial power of the Territory." *Pichardo*, 613 F.3d at 94 (quoting 4 V.I.C. § 21). We were given certiorari jurisdiction over the V.I. Supreme Court's final decisions under 48 U.S.C. § 1613. *Id.* at 94 (internal quotations omitted).

11

jurisdiction over cases that have commenced in our Court (through a petition for writ of certiorari) on or after that date. The Bar Association, expressing a desire to reduce the backlog of cases in the Virgin Islands court system, supports the latter interpretation.[6] The choice of interpretation is relevant here because the case against Fahie commenced in the Superior Court in November 2011, but was not the subject of a petition to us until 2016.

This is not the first time we have been asked to construe § 1613. In *North America Seafarers International Union ex rel. Bason v. Government of the Virgin Islands* ("*Bason*"), we adopted the first of the two interpretations described above and expressly held that the statute eliminates jurisdiction over all cases commenced in the Superior Court after December 28, 2012. 767 F.3d 193, 205-06 (3d Cir. 2014). In that case, the original plaintiff, Bason, died during the pendency of an appeal for reinstatement to a previous employment position. *Id*. at 195-200. We eventually dismissed the case on mootness grounds, *id*. at 211, but we did so only after deciding the threshold jurisdictional question concerning § 1613, saying, "we conclude that we still possess

---

[6] The Bar Association argues that, if the first interpretation is adopted, our certiorari jurisdiction "will extend ... over Virgin Islands cases indefinitely" (Br. of Amicus Curiae at 19), because of significant delays in the Superior Court, where there are currently 6,000 pending cases, each taking on average 10 years for adjudication. That result, says the Bar Association, would be "absurd ... given that the stated purpose of [the amendment to § 1613] ... was to end such oversight immediately upon its passage." (*Id*. at 19.)

certiorari jurisdiction over proceedings that were filed in the Virgin Islands courts before [§ 1613's] enactment date[.]" *Id.* at 201. We also said our decision was "[b]ased on the language of the statute, analogous legislation, and prior case law[.]" *Id.* at 206.

The Bar Association disagrees with *Bason* and argues that our analysis relating to jurisdiction "contravened the jurisprudence of the Supreme Court ... and the uncontradicted legislative history [of § 1613.]" (Br. of Amicus Curiae at 2.) It also asserts that the jurisdictional analysis in *Bason* is non-binding because the "unequivocal determination that the matter was moot by reason of Bason's intervening death renders the remainder of the *Bason* decision dicta." (*Id.* at 4.) On those grounds, the Bar Association urges that we "overturn *Bason*[,]" and it says that we have "the complete freedom" to do so without requiring *en banc* review. (*Id.* at 3.)

No matter how we might now view *Bason*, however, the Bar Association is mistaken about our "complete freedom[.]" (*Id.*) We deliberately chose to assess the jurisdictional question as a threshold issue in *Bason*, recognizing that, "while threshold jurisdictional issues must ordinarily be decided before turning to the merits, 'there is no mandatory sequencing of jurisdictional issues.'"[7] 767 F.3d at

---

[7] The Bar Association acknowledges that reasoning, but argues that "[t]hat principle has no application ... when subject matter jurisdiction is absent." (Br. of Amicus Curiae at 8.) Essentially, it is arguing that we treat mootness as a *threshold* threshold question, or that there is a threshold

13

202 n.3 (quoting *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (further quotations omitted)). Then after extensive analysis, we concluded that the words "cases commenced" were a reference "to the filing of a complaint in the Virgin Islands Superior Court." *Id.* at 206 (quotation and alteration omitted). That ruling was not merely non-binding dicta, and it remains the law in our Circuit.[8] Thus, while we are grateful for the interest and assistance of the Bar Association, we cannot accept its argument. According to *Bason*, we have jurisdiction over Fahie's claims.

### B. Inclusion of the "Aiding and Abetting" Instruction

Fahie objects to the inclusion of the "aiding and abetting" instruction, not to its content, so we are not asked to review the legal accuracy of the instruction, which would call for de novo review. *Gov't of V.I. v. Isaac*, 50 F.3d 1175, 1180 (3d Cir. 1995) ("[W]here ... the question is whether the jury instructions failed to state the proper legal standard, this

---

hierarchy, but it fails to substantiate that argument with any case law and we are unpersuaded.

[8] Even if we were to agree that *Bason* was wrongly decided, we are not at liberty to overturn the holding without *en banc* review because it is not dicta. *Mariana v. Fisher*, 338 F.3d 189, 201 (3d Cir. 2003). We have already denied such a petition previously. Sur Petition for Rehearing, *North America Seafarers Int'l Union ex rel. Bason v. Gov't of the V.I.*, 767 F.3d 193 (3d Cir. 2014) (No. 13-1247) (Sept. 30, 2014).

14

court's review is plenary.").  Instead, we review for abuse of discretion the trial court's decision to include the instruction at all.  *Cf. id.* ("Generally, we review the district court's refusal to give certain jury instructions on an abuse of discretion basis."); *see also United States v. Moreno*, 727 F.3d 255, 261 (3d Cir. 2013) ("[I]n the absence of a misstatement [within the jury instructions] we review for abuse of discretion." (quotation omitted)).

"When jury instructions are challenged, 'we consider the totality of the instructions and not a particular sentence or paragraph in isolation.'"  *United States v. Thayer*, 201 F.3d 214, 221 (3d Cir. 1999) (quoting *United States v. Coyle*, 63 F.3d 1239, 1245 (3d Cir. 1995)), *abrogated on other grounds by Skilling v. United States*, 561 U.S. 358 (2010).  "The issue is 'whether, viewed in light of the evidence, the charge as a whole fairly and adequately submits the issues in the case to the jury.'"  *Id.* (quoting *United States v. Zehrbach*, 47 F.3d 1252, 1264 (3d Cir. 1995)).

Fahie advances two challenges to the "aiding and abetting" instruction.  First, he argues that it was erroneous because it was given "despite the fact that the government never presented [an aiding and abetting] theory at trial." (Opening Br. at 14.)  Second, he argues that the instruction is problematic because Francis pled guilty to being an accessory after the fact, effectively eliminating the possibility of Francis being a principal for Fahie to "aid or abet" in the shooting. (*Id.* at 14, 16-19); *see also Gov't of V.I. v. Aquino*, 378 F.2d 540, 553 (3d Cir. 1967) ("By definition, an accessory after the fact is one who stands outside the commission of the substantive crime, for his offense consists of what he does, after he knows it has been committed, to aid the offender to

15

avoid apprehension or punishment."). We address those arguments in turn.

Fahie says that the instruction was erroneous because it was included even though the government did not present an aiding and abetting theory.[9] But the record demonstrates that the government did, in fact, present an aiding and abetting theory to the jury. In its closing statement, the government discussed Kelly's testimony and drew the jury's attention to the portions of her statement that refer to two shooters. (*See* JA at 873-74, 876.)[10] The government laid the groundwork for that argument when it questioned Kelly. (JA at 744, 751.)[11] The record thus shows that the government

---

[9] The government seems to agree that it did not pursue the theory. (*See* Answering Br. at 8 ("The record indicates that the Information was revised prior to jury deliberations, which reflects the People's decision not to pursue an aiding and abetting charge.") (citing JA at 52-54).) But we take that as an admission that it did not pursue the theory in its case-in-chief. It did in fact present the theory following Kelly's testimony.

[10] JA at 873-74 ("Listen to her reference of 'they' during the course of that 9-1-1 call. ... [S]he saw an arm extended and heard shots firing at the same time from the very stairwell where Kamaal Francis said Jamal Fahie was."); JA at 876 ("[W]hat we heard from Carol Kelly was consistent with what you heard from Mr. Francis[.]").

[11] JA at 744 ("Q: And you looked up, was the arm that you saw extended [shooting], was it extended at that point in time? A: Yes. Q: And at that point in time did you see where

indeed did contend that Fahie was, at the very least, involved in the shooting as an aider and abettor, and there was sufficient evidence to support an instruction to the jury to that effect.[12]

That the government did not use the phrase "aiding and abetting" when talking to the jury does not mean the judge was precluded from including the instruction. *See United States v. Gordon*, 812 F.2d 965, 969 (5th Cir. 1987) ("The words 'aid and abet' need not appear in the indictment in order to sustain a conviction as an aider and abettor ... '[O]ne who has been indicted as a principal may be convicted on evidence showing that he has merely aided and abetted the commission of the offense.'") (quoting *United States v. Vines*,

---

Mr. Francis went? A: He was still approaching the corner of the building. Q: Okay. And that's before, as you testified, you saw him fire four, five shots? A: Yes."); JA at 751 ("Q: After th[at] final set of shots, where did the individuals go? A: They both ran down the stairwell. Q: Okay. So the individual whose arm you saw extended, he travel[ed] down the stairwell? A: Yes. Q: And Mr. Francis you said also traveled down the stairwell; is that correct? A: Yes.").

[12] Carol Kelly's testimony strongly suggests that there were two shooters. *See supra* n.4. Her testimony, even when compared to countervailing evidence, was sufficient to allow a reasonable jury to find Fahie guilty of aiding and abetting the criminal activity. Additionally, the testimony of Francis and Webbe, as well as forensic evidence, added to the sufficiency of the evidence, and the court acknowledged that at trial.

17

580 F.2d 850, 853 (5th Cir. 1978), *cert. denied*, 439 U.S. 991 (1978)). The government communicated its intent to argue the aiding and abetting theory when it amended the Information to include aiding and abetting as a basis for criminal liability and when it requested that the judge add an aiding and abetting instruction to the jury charge. Fahie was thus on notice that the government was indeed relying on that theory.

The second argument Fahie advances is that the instruction is problematic because "legally, there was no one for Fahie to 'aid and abet'" since Francis was, by virtue of his plea agreement, an accessory after the fact, which precluded any consideration of him as a participant in the shooting. (Opening Br. at 14, 19.) Essentially, Fahie argues that Francis's plea to being an accessory after the fact confined the government's proof at Fahie's trial. By Fahie's lights, since an accessory after the fact "[b]y definition ... is one who stands outside the commission of the substantive crime ... [,]" *Aquino*, 378 F.2d at 553; *see also* 14 V.I.C. § 12(a) (defining accessory after the fact as having the same mens rea requirement under Virgin Islands law), Francis could not be a participant in the shooting and there was no one for Fahie to aid and abet in the murder.[13]

---

[13] Fahie confusingly makes his argument by focusing substantial portions of his briefing on *Francis's* inability to be an aider and abettor to Fahie, but the focus here is on whether *Fahie* could be found guilty of aiding and abetting in the murder, not on whether Francis could be found guilty under that theory.

That argument has a certain superficial appeal but is flawed. It rests on an improper understanding of judicial estoppel.[14] The fact that the government negotiates a plea does not mean that the government is required to treat all aspects of that plea as binding in future prosecutions. Such a requirement could unnecessarily tie the hands of prosecutors who gain a greater understanding of the facts over time, and it

---

[14] Judicial estoppel is triggered when a court deals with inconsistent positions taken by a party. *See Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, 779 F.3d 214, 221-22 (3d Cir. 2015) ("The doctrine of judicial estoppel prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.") (citation omitted). That doctrine

> requires that: (1) a party adopts a position clearly inconsistent with an earlier position and (2) the party had succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled."

*Id.* (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)). Thus, "absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory." *In re Kane*, 628 F.3d 631, 638 (3d Cir. 2010) (quoting *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 319 (3d Cir. 2003)).

could yield unfair windfalls for later defendants. "Judicial estoppel is only appropriate when the inconsistent positions are tantamount to a knowing misrepresentation to or even fraud on the court." *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.,* 337 F.3d 314, 324 (3d Cir. 2003) (internal quotations omitted). The government's position here does not amount to anything of the kind.

Two analogous cases are persuasive in this regard. In *Standefer v. United States*, the Supreme Court upheld an aiding and abetting conviction under 18 U.S.C. § 2, despite the principal defendant's having been acquitted of the offense. 447 U.S. 10, 11-14 (1980). The Court concluded that, "[under § 2] ... all participants in conduct violating a federal criminal statute are 'principals[,]' [and] [a]s such, they are punishable for their criminal conduct; the fate of other participants is irrelevant."[15] *Id*. at 20. Later, in *Smith v. State*, the Indiana Supreme Court rejected a defendant's argument that judicial estoppel barred the government "from seeking an instruction on accomplice liability because it agreed to a guilty plea from another defendant on a theory of the facts that was allegedly inconsistent with Smith's being an accomplice to the killing." 765 N.E.2d 578, 581 (Ind. 2002). The court said, "[w]e do not believe the acceptance of a plea bargain from [the other defendant] on one theory of the case

---

[15] Fahie was convicted as an aider and abettor under 14 V.I.C. § 11. That statute was modeled after 18 U.S.C. § 2. *See Todman v. People*, 59 V.I. 675, 683 (V.I. 2013) (noting that 14 V.I.C. § 11 was modeled on 18 U.S.C. § 2, and indicating that the logic of *Standefer* applies with equal force in the Virgin Islands).

and the prosecution of Smith in a separate action on an alternate theory can be construed as 'playing fast and loose' with the courts." *Id*. at 584; *see also In re J.W.S.*, 825 P.2d 125, 128 (Kan. 1992) (rejecting the argument that "once the prosecution permits one of two codefendants to plead guilty to aiding and abetting, then it is locked into proving the second defendant is the principal."). At least on the facts here, we agree with that reasoning.[16]

We therefore reject Fahie's argument that judicial estoppel is applicable to bar the aiding and abetting theory in this case. There is enough evidence in the record to show that a theory of aiding and abetting was, in fact, presented at trial, and we discern no abuse of discretion in the trial court's decision to give an aiding and abetting instruction.

---

[16] Our holding does not mean that there is no role for judicial estoppel in constraining government theories of culpability. *See, e.g.*, *Drake v. Kemp*, 762 F.2d 1449, 1478-79 (11th Cir. 1985) (finding a due process violation where a prosecutor convicted one defendant of murder and then used that defendant's testimony (from his first trial, in which he attempted to demonstrate his innocence by pinning the blame on someone else) to convict another defendant for the *same* murder, explaining, "the prosecutor either believed or did not believe [the first defendant]. If he did believe him, then the prosecutor should not have prosecuted [him] ... If he did not believe [him], then the prosecutor used testimony he thought was false in order to convict [the other defendant], a conviction he could not constitutionally otherwise secure.").

21

*C.*     *The Anti-CSI Instruction*

The second question on which we granted certiorari concerns the use of an anti-CSI instruction and whether the V.I. Supreme Court applied the correct "harmless error" standard after finding the instruction was erroneous. On further consideration, we believe that the writ was, in that regard, improvidently granted. Because the propriety of an anti-CSI instruction is fundamentally a matter of Virgin Islands law, and not a matter of federal concern, we will vacate the writ of certiorari as it pertains to that question.

Our review of the briefing, record, and oral argument convinces us that the V.I. Supreme Court's determination that the anti-CSI instruction was error is a point of territorial law on evidence. The parties themselves agree on that,[17] and they appear to be right, since the language of the V.I. Supreme Court's decision focuses on Virgin Islands precedent rather

---

[17] *See* Oral Argument at 13:15-13:26, *Fahie v. People of V.I.* (No. 15-2721), http://www2.ca3.uscourts.gov/ oralargument/audio/15-2721Fahiev.PeopleofVI.mp3 (Fahie arguing that the V.I. Supreme Court was interpreting Virgin Islands law and "[the V.I.] Supreme Court is still free to determine that [the] instruction is improper in the Virgin Islands. It is not bound by the Third Circuit[.]"); *id.* at 15:41-16:51, 20:15-21:13, 22:39-24:10 (Fahie arguing that the assumption of error in question two is under Virgin Islands law and based on Virgin Islands jurisprudence); *id.* at 34:00-35:17 (the People arguing that "the [V.I.] Supreme Court is well within their rights ... that it was a state level argument that they made.").

22

than constitutional principles. *Fahie*, 62 V.I. at 636 ("Although we have not previously addressed the validity of an instruction informing the jury that the People [were] not required to produce specific scientific evidence, this Court has noted that when the trial court comments on the evidence, or the absence of evidence, it risks invading the exclusive province of the jury to decide what conclusions should be drawn from evidence admitted at trial.") (citations omitted).

In addition, a review of the factors provided in our local rules to guide our discretion in granting certiorari suggests that certiorari on this question is better withheld. 3d Cir. L.A.R. 112.1 (2011). Specifically, those factors are:

> (1) The Supreme Court of the Virgin Islands has decided a question in a way that conflicts with applicable decisions of this court, other appellate courts, or the United States Supreme Court. (2) The Supreme Court of the Virgin Islands has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by a lower court, as to call for an exercise of this court's powers of review. (3) The Supreme Court of the Virgin Islands has decided an important question of federal or territorial law that has not been, but should be, decided by this court. (4) The Supreme Court of the Virgin Islands was without jurisdiction of the case, or where, because of disqualifications or other reason, the decision of the Supreme Court of the Virgin Islands lacks the concurrence of the required majority of qualified non-recused judges.

*Id*. None of those factors appear to be applicable to the V.I. Supreme Court's ruling on this issue.

"Examination of a case ... on oral argument, may bring into 'proper focus' a consideration which, though present in the record at the time of granting the writ, only later indicates that the grant was improvident." *The Monrosa v. Carbon Black Exp., Inc.*, 359 U.S. 180, 184 (1959). That is the circumstance we are in. "Now that plenary consideration has shed more light on this case than in the nature of things was afforded at the time the petition for certiorari was considered," *Belcher v. Stengel*, 429 U.S. 118, 119-20 (1976) (citing *Monrosa*, 359 U.S. at 183-84), we have concluded that the writ should be vacated as improvidently granted to the extent it dealt with the anti-CSI instruction.

## III. Conclusion

For the foregoing reasons, we have jurisdiction; we will affirm the ruling on the aiding and abetting instruction; and we will vacate as improvidently granted the writ of certiorari as it pertains to the anti-CSI instruction.

24